DECISION
{¶ 1} This is an appeal from the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, adjudicating appellant, Daamon Long, to be a delinquent minor and committing appellant to the custody of the Ohio Department of Youth Services ("DYS") for a minimum of one year consecutive to a three-year minimum term for the use of a firearm. The trial court's order followed a magisterial hearing and finding that appellant had committed felonious assault, in violation of R.C. 2903.11(A)(2), and had committed the act of discharging a firearm, in violation of R.C. 2923.161(A).
{¶ 2} At the hearing, Courtney Jackson (formerly O'Neal) testified that on the night of September 15, 2000, Jackson's daughter, Asia Scott, attended a football game at Dublin Scioto High School in Dublin, Ohio. During the game, Asia telephoned her mother and said that she had been threatened by some other girls, upon which Jackson drove to the high school to pick up her daughter. Upon arriving, Jackson witnessed the beginning of a fight between her daughter and some other students, which Jackson and some Dublin Police Officers had to break up. Apparently, one of students involved in the altercation was Daana Long, appellant's sister. Jackson testified that she took her daughter home to their residence at 2415 Newkirk Lane, arriving there at about 11:30 p.m.
{¶ 3} Once home, Jackson made dinner in the kitchen while other members of the household went to other floors of the townhouse apartment. Jackson testified that the kitchen of the townhouse faces a sliding glass door, which exits from the living room to the patio, with a breakfast bar half-wall separating the kitchen from the living room. She stated that while she was cooking, she was also bringing some patio cushions into the house and so opened the vertical blinds of the patio doors. After partially completing the task of bringing in the cushions, she stopped to check on the food she was preparing. She stated that after she checked something in the oven, she stood up and immediately noticed there were two people on her patio, only one of whom she could clearly see. She then saw that one of the people, whom she said she immediately recognized as appellant, had a gun. She stated that she dropped to the floor just before shots were fired into the apartment.
{¶ 4} Jackson testified that after the shooting stopped she crawled toward the basement door to shout to the others to see if they were alright. She stated that once she ascertained that no one was hurt, she "waited on the floor for a little bit" before going to the phone to call 911. (Tr. 14.) Jackson said she was uncertain how much time passed between when she heard the last shot and when she dialed the phone. While on the phone, she identified the shooter as appellant. The police responded within a few minutes, and she again stated that appellant was the shooter. Jackson testified that she recognized appellant as someone who had worked with her daughter Asia at a local Chuck E. Cheese restaurant, and that appellant had given Jackson's daughter a ride home from work on at least two occasions.
{¶ 5} Upon responding to Jackson's home, Detective Thomas Burton took photographs and collected both shell casings and live rounds as evidence. At the hearing, this evidence was introduced into the record and tied to the crime scene.
{¶ 6} Based upon Jackson having named appellant as the suspect, Columbus Police Detective Robert J. Connor assembled a photo array which included four photographs of men similar in appearance to appellant and a fifth photograph of appellant. From the array, Jackson selected appellant's photograph as the person she saw with the gun at her door just before shots were fired. Detective Connor then proceeded to the home of appellant and brought him to police headquarters for questioning. After obtaining a waiver of appellant's rights, Detective Connor questioned appellant as to his activities that evening. Although appellant denied going to Jackson's apartment and denied firing a gun, appellant did say that he had ridden in the backseat of a white Buick belonging to Daquan Simpson that evening.
{¶ 7} Columbus Police Officer Jeffrey Hall testified that, upon hearing on his radio that appellant was sought in connection with the shooting, he went to appellant's residence and saw a white Buick parked the wrong way near the residence. Hall stated that he parked and observed the vehicle. According to Hall:
{¶ 8} "When the Buick took off, it left. It had one person in the car — and I could see people that were basically walking towards [appellant]'s residence. But I couldn't point out exactly who they were at that time." (Tr. 26.)
{¶ 9} Hall stated he followed the vehicle and observed that it was missing a license plate light. After running a check, he determined that the vehicle was registered to Daquan Simpson. He then initiated a traffic stop and obtained Simpson's consent to search the vehicle. On the backseat of the vehicle, he found a live round of ammunition.
{¶ 10} At the hearing, Mark J. Hardy, a criminologist with the Columbus Police Department, was identified as an expert in the area of firearms examination and identification. Hardy opined that spent .22 caliber bullet casings recovered at the scene were fired by the same weapon. He also stated that two live rounds, one recovered at the scene and one found in the backseat of Simpson's car, were also .22 caliber and had ejector marks which matched those of the four spent casings. Hardy explained that once a live round has been placed into the chamber it will bear similar marks on its casing to that of a spent round, even if it is not fired but is merely ejected.
{¶ 11} Based upon this evidence, the magistrate issued a decision finding appellant to be a delinquent minor. Appellant filed objections to the magistrate's decision, arguing that the magistrate had engaged in misconduct during the hearing by making comments which exposed a bias, abused her discretion in denying appellant's request to recall Jackson as a witness, erroneously rejected appellant's attempt to introduce what appellant claimed was "newly discovered evidence," and allowed the state to ask leading questions and withhold exculpatory evidence. Appellant also claimed that he was denied the effective assistance of counsel due to trial counsel's failure to introduce evidence of an altercation between appellant's father and Jackson's fiancé which occurred after the preliminary hearing but before the final hearing.
{¶ 12} On December 31, 2001, the trial court issued its decision overruling appellant's objections to the magistrate's decision and entering judgment approving the magistrate's recommendations. According to the trial court, the case hinged upon both Jackson's identification of appellant as the perpetrator at the time of the incident and upon the connection between spent and live rounds of ammunition found at the crime scene and the live round of ammunition found in the back of Simpson's car. Because appellant's various claims regarding misconduct of the magistrate and the ineffective assistance of counsel did not serve to impeach Jackson's testimony, negate the firearm testimony, or otherwise affect the outcome of the case, the trial court held that any errors which occurred during the hearing were minor and did not affect the court's conclusion that appellant committed the offenses with which he was charged.
{¶ 13} The trial court's decision served to adopt the magistrate's orders regarding the disposition of appellant's case. In her July 1, 2001 decision, the magistrate had committed appellant to DYS for institutionalization "for an indefinite term consisting of a minimum period of one year and a maximum period not to exceed [appellant]'s attainment of the age of twenty-one years.
{¶ 14} "The period of commitment to [DYS] * * * shall be in addition to the period of commitment for a violation of R.C. 2941.141, R.C. 2941.144, or another section of the revised code that relates to the possession or use of a firearm, as defined in R.C. 2923.11."
{¶ 15} In finding appellant to have committed the offense of improperly discharging a firearm at a habitation in violation of R.C.2923.161(A), the magistrate indicated that the period of commitment for this second offense should be served concurrently with the period of commitment for the felonious assault offense, and that both commitments should be served concurrently with the three-year firearm specification required by former R.C. 2151.355(A)(7).
{¶ 16} Appellant now assigns the following as error:
{¶ 17} "FIRST ASSIGNMENT OF ERROR
{¶ 18} "Appellant was denied effective assistance of counsel as guaranteed under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution because counsel failed to timely object to the introduction of inadmissible evidence that was inflammatory and highly prejudicial.
{¶ 19} "SECOND ASSIGNMENT OF ERROR
{¶ 20} "The trial court erred in finding that R.C. 2151.355
required the court to impose a three-year term of commitment to the Ohio Department of Youth Services for the firearm specification.
{¶ 21} "THIRD ASSIGNMENT OF ERROR
{¶ 22} "Appellant was denied his right to a trial before a fair and impartial court, in violation of his due process protections under the state and federal Constitutions.
{¶ 23} "FOURTH ASSIGNMENT OF ERROR
{¶ 24} "The court's verdict was against the manifest weight of the evidence, thereby, depriving Appellant of his due process protections under the state and federal Constitutions."
{¶ 25} Appellant's first assignment of error alleges he was denied the effective assistance of counsel during the hearing because his counsel failed to timely object to hearsay evidence alleging that appellant's sister had assaulted Jackson's daughter, failed to object to a police witness's description of other bad acts of appellant, and failed to object to comments regarding appellant's reputation even though appellant did not take the stand in his own defense. According to appellant, the cumulative effect of these shortcomings resulted in a conviction where otherwise none would have occurred.
{¶ 26} To show ineffective assistance of counsel, it must be demonstrated that counsel's performance fell below an objective standard of reasonable representation and that prejudice arose therefrom. State v. Bradley (1989), 42 Ohio St.3d 136. See, also, State v. Lytle (1976),48 Ohio St.2d 391; Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052. In demonstrating prejudice, appellant is required to show that there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland at 2068. Where the actions of counsel reasonably could be deemed "sound trial strategy," there can be no showing of ineffective assistance. Id. at 2065.
{¶ 27} In the case at bar, even if appellant were able to show that the alleged deficiencies of counsel were not related to trial strategy and fell below the standard of reasonable representation, he has failed to demonstrate that he was prejudiced by his counsel's actions. The state's case was based upon the eyewitness identification of appellant by Jackson, and at no time was her testimony impeached by any of the evidence introduced at trial. In addition, the identification of the spent shell casings and live rounds found both at the scene of the crime and in the backseat of the car connected the white Buick to the shooting at the Jackson residence, and appellant himself admitted that he had been riding in the backseat of the car that same evening. Under the circumstances, the magistrate was presented with ample evidence that appellant had committed the offenses with which he was charged, and trial counsel's introduction of or allusion to unrelated persons and events could not be deemed to have affected the magistrate's finding of delinquency. Appellant's first assignment of error is overruled.
{¶ 28} Appellant's second assignment of error charges that the trial court erred in imposing a three-year term of institutionalization for the gun specification. Appellant argues the magistrate misinterpreted the relevant statute to require the additional three years, and that a proper reading of the statute actually gave the court broad discretion in issuing an order of disposition. Thus, he argues the trial court was not required to impose an additional term for use of a firearm, and the magistrate was mistaken in her apparent belief that no other disposition was allowed by law.
{¶ 29} Former R.C. 2151.355(A)(7)[1], in effect at the time of the commission of the offenses with which appellant was charged, states that:
{¶ 30} "(A) If a child is adjudicated a delinquent child, the court may make any of the following orders of disposition:
{¶ 31} "(7)(a) If the child is adjudicated a delinquent child for committing an act, other than a violation of section 2923.12 of the Revised Code, that would be a felony if committed by an adult and is committed to the legal custody of the department of youth services pursuant to division (A)(4), (5), or (6) of this section and if the court determines that the child, if the child was an adult, would be guilty of a specification of the type set forth in section 2941.141, 2941.144,2941.145, or 2941.146 of the Revised Code in relation to the act for which the child was adjudicated a delinquent child, commit the child to the legal custody of the department of youth services for institutionalization in a secure facility for the following period of time, subject to division (A)(7)(c) of this section:
{¶ 32} "(i) If the child would be guilty of a specification of the type set forth in section 2941.141 of the Revised Code, a period of one year;
{¶ 33} "(ii) If the child would be guilty of a specification of the type set forth in section 2941.144, 2941.145, or 2941.146 of the Revised Code, a period of three years.
{¶ 34} "(b) If the child is adjudicated a delinquent child for committing a category one offense or a category two offense and is committed to the legal custody of the department of youth services pursuant to division (A)(5) or (6) of this section and if the court determines that the child, if the child was an adult, would be guilty of a specification of the type set forth in section 2941.142 of the Revised Code in relation to the act for which the child was adjudicated a delinquent child, the court shall commit the child to the legal custody of the department of youth services for institutionalization in a secure facility for a period of not less than one year or more than three years, subject to division (A)(7)(c) of this section.
{¶ 35} "(c) The court shall not commit a child to the legal custody of the department of youth services pursuant to division (A)(7)(a) or (b) of this section for a period of time that exceeds three years. The period of commitment imposed pursuant to division (A)(7)(a) or (b) of this section shall be in addition to, and shall be served consecutively with and prior to, a period of commitment ordered pursuant to division (A)(4), (5), or (6) of this section, provided that the total of all the periods of commitment shall not exceed the child's attainment of twenty-one years of age."
{¶ 36} In In the Matter of: Keith (Sept. 25, 2001), Franklin App. No. 01AP-228, this court addressed the use of firearm specifications in juvenile commitment proceedings. In Keith, the state argued that the trial court was too lenient in imposing a one year commitment, rather than a three year commitment, to a juvenile whose accomplice had brandished and used a firearm in the commission of the offense. Because the trial court concluded a firearm specification was merited by the facts, this court held that the trial court erred in imposing a one year commitment rather than a three year commitment. Citing Colegrove v. Burns (1964), 175 Ohio St. 437, this court found the trial court lacked the power to substitute a different sentence for that provided by statute, and remanded the matter to the trial court for resentencing consistent with the statutory requirement of a three year commitment on the firearm specification.
{¶ 37} Appellant asserts that the use of the word "may" in former R.C. 2151.355(A) indicates that the trial court was not required to impose the additional three year commitment, and that the magistrate misread the statute in rendering her decision. To the contrary, we find that the use of the word "may" merely indicates that the trial court had the discretion to make any one of a number of dispositions of this case, but that once the court adjudicated appellant to be a delinquent child for committing an act which would have been felonious assault if committed by an adult, and once the court committed appellant to the custody of DYS for institutionalization for an offense which would have had a firearm specification if committed by an adult, the court was required to impose a three year commitment pursuant to former R.C.2151.355(A)(7)(a)(ii). Even if we were to follow appellant's reading of the statute, there is some suggestion in the record that the magistrate felt an additional three years institutionalization was merited by the facts:
{¶ 38} "* * * And I think that [appellant] has a chance to — to get his life straight, but I think that he needs to be kept under lock and key until he's made that adjustment. I agree with the recommendation of Reclaim, that there is not that possibility of doing that in the community and, of course, I'm concerned about the, you know, bullets through a residence with people in it. It's especially frightening and dangerous, and I think [appellant] needs to consider all of these things in his own mind in order to be able to be assured, himself, and to help us be assured that this would never occur again." (Tr. 5.)
{¶ 39} We thus overrule appellant's second assignment of error.
{¶ 40} Appellant's third assignment of error asserts that he was denied his right to a fair trial because the magistrate's statement that she would not give weight to appellant's claims of innocence jeopardized his right to a fair and impartial hearing. Specifically, appellant points to an exchange which occurred during trial counsel's cross-examination of Detective Connor:
{¶ 41} "[trial counsel]: Did you ever ask him was he involved in the shooting?
{¶ 42} "[Connor]: Yes, I did.
{¶ 43} "* * *
{¶ 44} "[trial counsel]: What did he say?
{¶ 45} "[Connor]: He denied it.
{¶ 46} "[prosecutor]: Objection.
{¶ 47} "[magistrate]: Overruled.
{¶ 48} "[trial counsel]: Your Honor, this is not a statement by a party opponent. A statement by a party opponent is one admitted by a person contrary to the position. This would be self-serving hearsay that avoids — you know.
{¶ 49} "[magistrate]: Oh, it's no big surprise. It doesn't hurt. Okay.
{¶ 50} "[trial counsel]: Did you — did you ask him about his involvement in this incident?
{¶ 51} "[Connor]: Yes.
{¶ 52} "[trial counsel]: Okay. Was he cooperative?
{¶ 53} "[Connor]: Yes. He provided me with a statement.
{¶ 54} "[trial counsel]: And what did he say?
{¶ 55} "[Connor]: He denied being involved in the shooting." (Tr. 104-105.)
{¶ 56} Appellant also directs us to this exchange which occurred later in the proceedings, during direct examination of appellant's father, who appeared on behalf of the defense:
{¶ 57} "[trial counsel]: Did Daamon make a statement?
{¶ 58} "[witness]: Daamon said he didn't have anything — —
{¶ 59} "[prosecutor]: Objection, Your Honor.
{¶ 60} "* * *
{¶ 61} "[magistrate]: That's already in, a thousand times. We let that part in. I — everybody's gonna say it. It's harmless." (Tr. 24.)
{¶ 62} According to appellant, by indicating that introduction of appellant's assertions of innocence did not affect her consideration of the evidence, the magistrate revealed a bias which resulted in prejudice toward appellant and denied him a fair trial.
{¶ 63} The statements of the magistrate cannot justify reversal where appellant has failed to show prejudice. The test is whether the contested comments "caused manifest injustice" or had a "high probability of changing the outcome of the trial." State v. Armour (Dec. 19, 1991), Cuyahoga App. No. 59064, citing State v. Wade (1978), 53 Ohio St.2d 182, paragraph two of the syllabus. Moreover, "[a] judge's opinions of law, even if later found to be erroneous, are not by themselves evidence of bias or prejudice." In re Disqualification of Corts (1988),47 Ohio St.3d 601, 602. A trial judge is not presumed to be biased or prejudiced, so that in order to prevail on his claim, appellant must "set forth evidence to overcome the presumption of integrity." Okocha v. Fehrenbacher (1995), 101 Ohio App.3d 309, 322. Where there is overwhelming evidence of guilt, judicial statements tending to show bias do not require reversal. Armour, supra.
{¶ 64} Aside from the fact that agreeing with appellant would place this court in the unusual position of finding that the magistrate's failure to sustain the state's objections was prejudicial to appellant, the conduct of the magistrate did not rise to the level of compelling evidence of bias, and so did not jeopardize appellant's right to a fair trial. In making her statements, the magistrate was actually ruling in favor of appellant by allowing the introduction of evidence supporting his case. Following a "presumption of integrity" reading of her comments, it could be concluded that the magistrate, in ruling the evidence "harmless," was saying that it was not detrimental to the state's case to allow appellant's claims of innocence into the record, presumably because such evidence would be given its proper weight when she considered all the facts adduced at trial. Even if appellant is correct and the magistrate was actually making a cynical observation about appellant's claims of innocence — as in "all criminal defendants claim they are innocent, don't worry, I don't buy it" — her comments, while inappropriate, would not be sufficient to overcome the overwhelming evidence that appellant committed the offenses with which he was charged. There was ample evidence connecting appellant to the offense, none of which was impeached. Appellant's third assignment of error is overruled.
{¶ 65} Appellant's fourth assignment of error argues that his adjudication was against the manifest weight of the evidence because Jackson's limited contact with appellant prior to the incident called into question her identification of him as the perpetrator, and because the relationship between the time of the incident and the time the white Buick was pulled over indicate that appellant could not have committed the offense, since no vehicle could have driven that distance in such a short time.
{¶ 66} In reviewing manifest weight of the evidence questions, this court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Thompkins (1997), 78 Ohio St.3d 380, 387. This examination requires reversal only if the evidence produced does not attain the "high degree of probative force and certainty required of a criminal conviction." State v. Getsy (1998), 84 Ohio St.3d 180, 193. In determining this issue, this court must be mindful that the weight to be given the evidence and the credibility of the witnesses are to be decided by the trier of fact, and must not substitute its judgment for that of the trial court absent a miscarriage of justice. State v. Burdine-Justice (1998), 125 Ohio App.3d 707, 716.
{¶ 67} Upon reviewing the transcripts and evidence in the case at bar, we find that the manifest weight of the evidence does support the trial court's finding of delinquency. In its decision on appellant's objections to the magistrate's findings, the trial court found that while there were some inconsistencies in the testimony, they were not so substantial as to render untrustworthy Jackson's identification of appellant as the shooter. In addition, the court determined that while the exact time for the shooting was never established, it was before 11:55 p.m., and the time of the traffic stop was 12:07 p.m. The court concluded that because Jackson had "spent an undetermined amount of time just laying on the floor behind the breakfast bar after the shooting stopped, before calling 911," it was "not only possible, but probable, that [appellant] had ample time to get from Newkirk Lane to his home in time for Officer Hall and [appellant]'s father to observe him there sometime around midnight."
{¶ 68} We agree with the trial court that the manifest weight of the evidence clearly supports the trial court's finding of appellant to be a delinquent minor, and therefore overrule appellant's fourth assignment of error.
{¶ 69} Accordingly, having overruled appellant's four assignment's of error, the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, is affirmed.
Judgment affirmed.
TYACK, P.J., and PETREE, J., concur.
[1] R.C. 2151.355 was repealed effective January 1, 2002, by the Juvenile Justice Reform Act, 2000 Sub. S.B. No. 179, Section 4. In re Cross (2002), 96 Ohio St.3d 328.