IN RE BOLDEN (3 cases).

(Nos. 1-73-52, 1-73-53 and 1-73-54—Decided October 17, 1973.)

*Mr. William J. Davis*, for appellant James Bolden, Jr.
*Mr. Lawrence S. Huffman*, prosecuting attorney, and *Mr. David R. Kinworthy*, for appellee state of Ohio.

GUERNSEY, P. J. Case number 1-73-52 in this Court originated as case number 14808 in the Juvenile Division, Common Pleas Court of Allen County. In that case James Bolden, Jr., was charged with being a delinquent child by reason of committing an act of assault and battery upon one Treece (a schoolteacher) on February 21, 1973.

Case number 1-73-53 in this Court originated as case number 14809 in the same trial court, in which Bolden was charged with being a delinquent child by reason of committing an act of assault and battery upon one Sherri White (a fellow student) on February 21, 1973.

Case number 1-73-54 in this Court originated as case number 14810 in the same trial court, in which Bolden was charged with being a delinquent child by reason of committing an act of assault and battery upon one Terri White (a fellow student) on February 21, 1973.

The complaint in each case was filed on February 22, 1973, and hearing was scheduled originally for March 8, 1973, with one Vandemark entering his appearance as at-

torney of record for Bolden. At Vandemark's request, because of his being engaged in trial in another court, the March 8th hearing was vacated and the cases reassigned for hearing on March 19, 1973. On March 16, 1973, Vandemark withdrew as attorney for Bolden and on that date Bolden's mother by letter sought a continuance of the hearing so that she could obtain counsel. The cases were thereupon reassigned for hearing on April 5, 1973, and, for some reason not apparent in the record, further reassigned for hearing on April 18, 1973.

On April 18, 1973, the cases were heard together by the Juvenile Court. At that time Mrs. Bolden indicated that she had been having difficulty in obtaining counsel "due to the publicity on the case" which "made it extremely hard to obtain an attorney locally." She did not specifically object to the court proceeding and the court did proceed with the cases. On that date the court filed its journal entry in case number 14808, finding Bolden to be a delinquent child and ordering that he "be committed to the temporary care and custody of The Ohio Youth Commission, for study only" and that a warrant issue to the Sheriff to convey him to the Juvenile Diagnostic Center in Columbus. On the same date and apparently at the same hour, the Juvenile Court filed its journal entry in case number 14809 finding Bolden to be a delinquent child and ordering:

"Fined $50.00 and court costs and sentenced to 30 days in the Allen County Juvenile Detention, and the fine and the 30 days are suspended on the following conditions: Placed on probation with the Probation Department of this court; released into the physical care and custody of his parents, * * * [upon certain stated conditions]."

Again, on the same day and apparently at the same hour, the Juvenile Court filed its journal entry in case number 14810 finding Bolden to be a delinquent child and ordering:

"Fined $50.00 and court costs and sentenced to 30 days in the Allen County Juvenile Detention, and the fine and 30 days are suspended on the following conditions: Placed on probation with the Probation Department of this court,

He is to abide by the same terms as set forth in Case No. 14,809.''

On April 20, 1973, William J Davis wrote a letter to the trial court requesting that his appearance as attorney be entered in each case and on May 4, 1973, filed notice of appeal to this court from the judgment in each case entered on April 18, 1973, on behalf of the child and his parents.

On appellants' motion the three appeals were consolidated for hearing only in this court and were submitted on the briefs of the parties and the oral argument of the appellee, neither the appellants nor their counsel appearing for the assigned hearing.

The appellants' assign error of the trial court (1) in denying Bolden his right to be represented by counsel, (2) in abusing its discretion by failing to grant a continuance pursuant to Juvenile Rules 23 and 34(a), and (3) in that the verdict was against the weight of the evidence as the State failed to prove its case beyond a reasonable doubt.

Although the State has never moved to dismiss the appeal in case number 1-73-52, it states in its brief on the merits that the order or judgment appealed from entered in Juvenile Court Case number 14808 is not a final appealable order and the appeal therefrom should be dismissed on the authority of *In re Whittington*, 17 Ohio App. 2d 164, 173 wherein it was held:

''* * * It is our finding that such order of referral to the Juvenile Diagnostic Center [after a finding of delinquency] is not a final appealable order; rather such referral is but a procedural incident such as is analogous to the referral of an adult under the provisions of Section 2947.-25, Revised Code, to an approved state facility for observation. See *State* v. *Thomas*, 175 Ohio St. 563, which holds such a referral of an adult not to be a final appealable order.''

This holding by the Fifth District Court of Appeals represents a reversal of its previous holding in *In re Whittington*, 13 Ohio App. 2d 11. From the earlier holding motion to certify was filed to the Supreme Court of Ohio

which was overruled and the appeal dismissed on March 15, 1967, in case number 40712. Similarly, a motion to certify was filed after the Court of Appeals rendered its decision reported in 17 Ohio App. 2d, and the Supreme Court again overruled the motion to certify and dismissed the appeal on March 4, 1970, in case number 69-287. However, the decision reported in 17 Ohio App. 2d constitutes a decision in four different appeals and it is not clear from the reports that that part of the decision pertaining to the appealability of the order in case number 421 in the Fifth District Court of Appeals was subject either to the ruling by the Supreme Court on the motion to certify or subject to its dismissal entered in Supreme Court case number 69-287. We thus have no authoritative decision of the Supreme Court relating specifically to the appealability of such an order.

We feel it then appropriate to further analyze the situation. Prior to *State* v. *Thomas,* 175 Ohio St. 563, *State* v. *Theisen,* 91 Ohio App. 489, was the primary authority on the appealability of an order made under the provisions of G. C. 13451-20 (now R. C. 2947.25) wherein persons convicted of certain offenses were committed to the Lima State Hospital for observation for a period of not more than sixty days. It was held in that case, page 493:

"The order of reference made after conviction and before sentence is incident to final imposition of sentence and is an indirect affirmance and recognition of the conviction. It is a part and parcel of the final sentence and in effect is a preliminary sentence. The order of commitment deprives the defendant of his liberty in the same manner, if not to the extent, as in the case of final sentence and judgment. The order is a judgment having the attributes of a sentence. * * * "

In *State* v. *Thomas, supra,* the Supreme Court of Ohio, had had certified to it a judgment of the Fifth District Court of Appeals finding such an order not to be a final appealable order to be in conflict with the judgment in *State* v. *Theisen.* The Supreme Court rejected *Theisen* and held:

"After a defendant's conviction of the crime of sodomy under Section 2905.44, Revised Code, and before sentence, his referral by a court of competent jurisdiction to an approved state facility for observation for a period of not more than 60 days as provided by Section 2947.25, Revised Code, is not a final appealable order but a procedural incident, and in accordance with Section 2953.05, Revised Code, any appeal must await and follow the imposition of sentence."

In his opinion in *State* v. *Thomas*, Judge Zimmerman, observed that R. C. 2947.25 called for commitment for observation "after conviction and before sentence," that R. C. 2953.05, permitted appeal only "after judgment and sentence" and that there is no appealable order "which the statutes recognize."

How then does the commitment for observation or examination under R. C. 2947.25 differ, if at all, from the commitment to the Ohio Youth Commission under R. C. 2151.-355?

In the first place the former arises from a criminal proceeding whereas the latter is part of a civil proceeding. Although the former order has elements affecting a substantial right, as determined in *State* v. *Theisen, supra,* the Supreme Court disregarded such factor and concluded, in effect, that that in itself is not enough when there is no statute providing for appeal therefrom. On the other hand, R. C. 2501.02, at least with reference to the finding on which the commitment to the Ohio Youth Commission is based, prescribes that Courts of Appeals shall have jurisdiction "upon an appeal upon questions of law to review * * * the finding, order or judgment of a juvenile court that a child is delinquent * * * for prejudicial error committed by such lower court." This statute bestows jurisdiction on the court to entertain an appeal, so defined, and R. C. 2505.03, the general statute permitting appeals of final orders, judgments, or decrees, in implementation of constitutional provisions, would permit an appeal from the order committing temporary custody to the Ohio Youth Commission provided that such order is a final order, judgment or de-

cree. It is not even arguable that such order of commitment is a judgment or decree in the restricted sense, so the issue becomes whether it is a final order in the constitutional sense, defined by the legislature in R. C. 2505.02 as ''an order affecting a substantial right in an action which in effect determines the action and prevents a judgment, an order affecting a substantial right made in a special proceeding or upon a summary application in an action after judgment, or an order vacating or setting aside a judgment and ordering a new trial.'' Although, the order of commitment may have affected a substantial right, it neither determined the action and prevented judgment, nor was it in a special proceeding (*State* v. *Collins,* 24 Ohio St. 2d 107) or upon a summary application, nor did it order a new trial. Thus, it was not a final order subject to appeal but merely a procedural incident, as was the order for observation under R. C. 2947.25 considered by the Supreme Court in *State* v. *Thomas, supra.*

We must conclude that the appeal in case number 1-73-52 from the order of commitment to the Ohio Youth Commission entered by the trial court in its case number 14808, must be dismissed, and we may not consider the assignments of error as they pertain to that case. Nevertheless, the same proceedings brought about judgments in the other two cases and we will have to review those proceedings in our consideration of the assignments of error as they pertain to cases numbers 1-73-52 and 1-73-54.

The first two assignments of error bear on each other and will be considered together. Juvenile Rule 4(A) prescribes that ''every party shall have the right to be represented by counsel,'' and Rule 29(B)(3) that ''at the beginning of the hearing, the court shall: (3) Inform unrepresented parties of their right to counsel and determine if such parties are waiving their right to counsel.'' Juvenile Rule 23 prescribes that ''continuances shall be granted only when imperative to secure fair treatment for the parties,'' and Rule 34(A) provides that ''Where the dispositional hearing is to be held immediately following the adjudicatory hearing, the court, upon the request of a party

shall continue the hearing for a reasonable time to enable the party to obtain or consult counsel."

From these rules, as well as from established constitutional law, the right of Bolden and his parents to be represented by counsel is apparent. There is no claim of indigency, however, and the issue only involves the right to be represented by employed counsel and does not involve any supposed right to be represented by appointed counsel. It was, therefore, up to Bolden and/or his parents to make their own arrangements for employed counsel. The record shows that at one point they had employed counsel, and that several continuances were had to give them opportunity to obtain other counsel. Although the record indicates a claim of difficulty in obtaining such counsel it does not indicate that such counsel could not be obtained had due diligence been exercised and had the parents been willing to enter into reasonable contractual arrangements for counsel's services. Indeed, the fact appellate counsel was employed within a few days after trial tends to prove the availability of counsel for trial. The law does not require continuances to be granted and trials postponed indefinitely until counsel is obtained. The record reveals that the parties were given a reasonable opportunity to obtain same and we find no error of the trial court in not granting a continuance and in proceeding with the trial under these circumstances.

Appellants' complaint about not granting a continuance between adjudication and disposition is quite another matter. Under Juvenile Rule 2(1) "Adjudicatory hearing" is defined, among other things, as "a hearing to determine whether a child is a * * * delinquent," and under Rule 2(8) "Dispositional hearing" is defined as "a hearing to determine what action shall be taken concerning a child who is within the jurisdiction of the court." Considering the statutes and rules together it is apparent that, as used in this latter definition, the phrase "within the jurisdiction of the court" is confined in the circumstances of this case to the status Bolden attained once he had been found delinquent. At that point, under the provisions of Juvenile Rule 34(A), had either Bolden or either of his

parents requested same the trial court was required to continue the hearing for a reasonable time to enable them to obtain or consult counsel before the court proceeded with the dispositional hearing. A careful review of the transcript of proceedings does not show that such a request was made and the appellants have failed to make an affirmative showing of error in this respect as was their burden to do.

The third assignment of error, dealing with the weight of the evidence, is confined in this review, to the delinquency charges arising from the alleged assault and battery against Terri White and the alleged assault and battery against Sherri White. Again a careful review of the transcript of proceedings shows that there was sufficient evidence of probative value to support a conclusion by the trial court, in each instance beyond a reasonable doubt, that Bolden had committed the act complained of without legal justification for doing so.

We conclude that to the extent that Bolden was found delinquent, the judgments in each of these latter cases must be affirmed. However, we are confronted with the anomalous situation arising from the different dispositions in each of the three cases from which appeals were taken. As the appeal will not lie, at this point of time, from the cause resulting in the commitment to the Ohio Youth Commission that judgment may not now be disturbed. Nevertheless, the disposition ordered *at the same time* in each of the other two appeals may, and must, be considered, because none of the dispositions are consistent with each other. It is inconsistent and impossible to commit a child to the temporary custody of the Ohio Youth Commission and *at the same time* commit him to detention. It is likewise impossible to place him in the physical care and custody of his parents, or on probation with "the Probation Department," and *at the same time* place him in the custody of the Ohio Youth Commission. It will also be noted that in case number 14809 Bolden was "released into the physical care and custody of his parents," and in case number 14810 he was not.

It has been uniformly held in Ohio that proceedings

in the Juvenile Court are civil in nature and not criminal and that R. C. 2151.35, providing for disposition of juvenile cases implies protection for the minor and not punishment. *Cope* v. *Campbell*, 175 Ohio St. 475. Although that section has been superseded, insofar as disposition is concerned by R. C. 2151.353 to 2151.356, inclusive, and R. C. 2151.355 does permit a fine of not to exceed fifty dollars and costs together with "such further disposition as the court finds proper," it is still not contemplated that there be any penal confinement of a delinquent child. R. C. 2151.-34 specifically prohibits commitment to any prison, jail or lockup and permits detainment of children in a juvenile detention home only until final disposition of their case. Thus, disposition may not include, as punishment or otherwise, confinement in a juvenile detention home, and such portions of the judgments of the trial court providing for such detention must be reversed and vacated.

Although R. C. 2151.23, insofar as it gives jurisdiction to the juvenile court "concerning any child who *on or about the date specified in the complaint* is alleged to be a * * * delinquent * * * ;" (emphasis added), implies that several claims of delinquency may be made resulting upon trial in several findings of delinquency, nevertheless, the finding that a child is a delinquent child is the finding of a legal status which status is common to all proceedings tried within the same time reference and which must result in one disposition for all complaints or a separate disposition for each complaint which is consistent with and not mutually exclusive of the disposition made at the same time for another complaint.

Had we no guide to the real intention of the juvenile court in these cases we would have to require that court to reconsider all dispositions to determine which of the inconsistent dispositions was controlling. However, as that court has caused the commitment to the Ohio Youth Commission to be executed, as appears from the record to the exclusion of the other dispositions, we must vacate the other dispositions and remand the two cases to that court with instructions to enter dispositions not inconsistent with

or exclusive of the commitment to the Ohio Youth Commission and the ultimate disposition in case number 14808 which will be made after the report made by the Juvenile Diagnostic Center. In other words, at the time the juvenile court makes final disposition in case number 14808, the same disposition should also be applied to cases number 14809 and 14810, or separate dispositions should be made in the latter two cases not inconsistent with each other and not inconsistent with that made in case number 14808.

*Judgments accordingly.*

COLE and MILLER, JJ., concur.