## In re BRACEWELL.

[Cite as *In re Bracewell* (1998), 126 Ohio App.3d 133.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–970157.

Decided April 17, 1998.

134

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *Steven W. Rakow,* Assistant Prosecuting Attorney, for appellee, state of Ohio.

*David H. Bodiker,* Ohio Public Defender, and *Susan A. Ward,* Assistant Public Defender, for appellant, Theodore Bracewell.

HILDEBRANDT, Presiding Judge.

Theodore Bracewell appeals from the juvenile court's denial of his Civ.R. 60(B) motion for relief from judgment. We find defendant's assignment of error to be without merit, and we therefore affirm the judgment of the lower court.

Bracewell was charged in juvenile court with carrying a concealed weapon, a felony of the third degree if committed by an adult. Bracewell admitted the charge, and the juvenile court adjudicated him a delinquent child. The court ordered him permanently committed to the Department of Youth Services ("DYS"), but suspended the commitment, put Bracewell on official probation, and ordered that he be placed with his mother. On August 27, 1996, the juvenile court entered an order releasing Bracewell from official probation and submitting

him "to the lawful care, custody and control of parent, guardian, custodian and teachers."

Bracewell appeared in juvenile court several times after the original adjudication of delinquency for, among other charges, violations of conditions of probation imposed upon him in delinquency proceedings other than the one concerning the firearm charge. On November 7, 1996, the court found that Bracewell had violated another condition of house arrest and revoked the suspension of the order of permanent commitment to the DYS. Bracewell was ordered committed to DYS for an indefinite term of at least six months but not to exceed his twenty-first birthday.

On January 3, 1997, counsel for Bracewell filed a motion for relief from judgment pursuant to Civ.R. 60(B), alleging that the juvenile court had no jurisdiction to commit Bracewell to DYS. The juvenile court denied the motion, and Bracewell appealed. On appeal, Bracewell argues that because he was released from official probation for the felony charge in August 1996, the juvenile court was thereafter without jurisdiction to take further action, including commitment, based on that delinquency adjudication.

■ This court will not reverse the lower court's denial of Bracewell's Civ.R. 60(B) motion unless Bracewell demonstrates that the court abused its discretion. For the following reasons, we hold that the trial court did not abuse its discretion in denying the motion.

## A. JURISDICTION OF THE JUVENILE COURT

■ A juvenile court has jurisdiction "concerning any child who on or about the date specified in the complaint is alleged to be" a delinquent child.[1] This jurisdiction is continuing and may be invoked at any time by motion before the juvenile court.[2] If the child is ultimately adjudicated delinquent, the court has wide latitude in the order of disposition that it may make.[3] Because the purpose of maintaining a juvenile court is different from that of the criminal justice system for adults, a juvenile court is given discretion 'to make' any disposition "that the court finds proper."[4] The proceedings are considered not criminal but

---

1. R.C. 2151.23(A)(1).

2. Juv.R. 35.

3. See R.C. 2151.355(A).

4. R.C. 2151.355(A)(12); *In re Caldwell* (1996), 76 Ohio St.3d 156, 160, 666 N.E.2d 1367, 1370.

civil in nature, and the dispositions ordered by the court are considered not punitive but rehabilitative.[5]

In *In re Young Children,*[6] a consolidation of three cases, the Ohio Supreme Court considered whether a juvenile court had jurisdiction to enter custody orders after the so-called sunset date had passed for making such orders. In that case, different public services agencies had filed for and received temporary custody of young children. R.C. 2151.353(F) states that temporary custody orders expire one year from the time the complaint was first filed or the date the child was placed in shelter care, whichever is earlier. If, however, the children's services agency files a motion more than thirty days prior to the expiration of the order, the court is then allowed to modify or continue the temporary order.

In *Young,* none of the agencies filed a motion with the court prior to the sunset date. Thus, when the one-year sunset date passed, the custody orders expired by operation of statute. The juvenile court nevertheless considered and granted motions belatedly filed by the agencies to continue their custody. In determining the propriety of the judges' actions, the court stated:

"Temporary custody is terminated upon the passing of the sunset date, when no motion is filed pursuant to R.C. 2151.415(A). However, the issue before us, what happens to the court's *jurisdiction,* is not clear. * * *

"R.C. 2151.353(E)(1) provides in pertinent part that 'the court shall retain jurisdiction over any child for whom the court issues an order of disposition pursuant to division (A) of this section * * * until the child attains the age or eighteen * * * or the child is adopted.' *It seems abundantly clear that this provision was intended to ensure that a child's welfare would always be subject to court review. That is, given that a child, by virtue of being before the court pursuant to R.C. Chapter 2151, was at some risk of harm, the General Assembly provided for the child's safety and welfare by ensuring that juvenile court would retain jurisdiction over the child through the age of majority. R.C. Chapter 2151 places no limitation on this general jurisdiction."*[7] (Emphasis added.)

The court therefore held that expiration of the custody orders did not divest the juvenile court of jurisdiction to extend, modify or take other action in those

---

**5.** See *Cope v. Campbell* (1964), 175 Ohio St. 475, 26 O.O.2d 88, 196 N.E.2d 457, paragraph one of the syllabus, overruled on other grounds in *In re Agler* (July 9, 1969), 19 Ohio St.2d 70, 48 O.O.2d 85, 249 N.E.2d 808; *In re Young Children* (1996), 76 Ohio St.3d 632, 669 N.E.2d 1140; *In re Bolden* (1973), 37 Ohio App.2d 7, 66 O.O.2d 26, 306 N.E.2d 166.

**6.** (1996), 76 Ohio St.3d 632, 669 N.E.2d 1140.

**7.** *Id.,* 76 Ohio St.3d at 637, 669 N.E.2d at 1144.

cases.[8]

Because juvenile court proceedings are not criminal but civil in nature,[9] and are designed to provide for the care, protection, and mental and physical development of children who engage in what otherwise would be criminal behavior,[10] the reasoning of the court in *Young*, involving neglected or dependent children, is equally applicable here.[11]

In *In re Ravanna T.*,[12] the juvenile court ordered a juvenile to be committed to DYS for a minimum of one year and continuing until the child reached twenty-one. The court then suspended the commitment "on condition of no violation of court order, probation or any law." The juvenile's probation was officially terminated in November 1995.

In February 1996, the juvenile was charged with violation of a local safe-school ordinance. The juvenile court rescinded the stay of the commitment and ordered that the juvenile be committed to DYS. The juvenile appealed that dispositional order, arguing that once he was released from probation, the court had no authority to reimpose the suspended commitment order. The court held:

"[D]espite appellant's successful completion of his probation period, the stay continued until age twenty-one and could be revoked if appellant violated any other laws. Upon review of the record in this case, we cannot say that the trial court abused its discretion in rescinding its prior dispositional stay when appellant was again adjudicated delinquent in violation of its original order."[13]

The court's decision was influenced by the lower court's order conditioning the suspension of the commitment order not only on completion of probation, but on the juvenile's continued compliance with the law. Here, the trial judge stated at the first dispositional hearing that the order of commitment was stayed, and that the juvenile would not have to appear before the court again unless he got himself into some "more difficulty" or violated his probation. Thus, while the order was not as specific as the court's in *Ravanna*, the court here also conditioned the stay

---

8. *Id.* See, also, *Linger v. Weiss* (1979), 57 Ohio St.2d 97, 11 O.O.3d 281, 386 N.E.2d 1354 (although the time mandated in the juvenile rules for acting on a dependency matter had passed, the court still had continuing jurisdiction to make dispositional orders).

9. See *In re Bolden, supra,* 37 Ohio App.2d at 16, 66 O.O.2d at 31, 306 N.E.2d at 172.

10. See R.C. 2151.01.

11. See, generally, *In re Ravanna T.* (Aug. 1, 1997), Lucas App. No. L–96–371, unreported, 1997 WL 438233.

12. (Aug. 1, 1997), Lucas App. No. L–96–371, unreported, 1997 WL 438233.

13. *Id.* at 3.

on continued compliance with the law. We find no abuse of discretion in the juvenile court's denial of Bracewell's Civ.R. 60(B) motion for relief from judgment.

### B. DISSOLVING THE STAY ON THE COMMITMENT ORDER DOES NOT IMPOSE DOUBLE PUNISHMENT

■ Moreover, probation is not a "sentence" or punishment (nor is any other dispositional order of a juvenile court), but is merely a legal status allowing the juvenile to remain with his family while under the supervision of the court.[14] Here, Bracewell was permitted to remain with his parents under the supervision of the department of probation. Thus, the release from probation returned custody and supervisory responsibility to Bracewell's family, but did not otherwise affect the court's continuing jurisdiction over Bracewell to make appropriate dispositional orders. Reinstating the commitment order was not a double punishment, but was undertaken for the protection and rehabilitation of the child, whose parents were unable to ensure his compliance with the law.

Of course, the jurisdiction of the juvenile court relating to a child is not without end. R.C. 2151.38 states:

"(A) When a child is committed to the legal custody of the department of youth services, the jurisdiction of the juvenile court with respect to the child so committed shall cease and terminate at the time of commitment * * *. [A]ll other dispositional orders made by the court shall be temporary and shall continue for a period that is designated by the court in its order, until terminated or modified by the court or until the child attains twenty-one years of age."

■ Also, if the juvenile is bound over to the court of common pleas for criminal prosecution as an adult, the juvenile court loses jurisdiction.[15]

### C. CONTINUING JURISDICTION DOES NOT INVALIDATE PROBATION OR RELEASE FROM PROBATION

■ The conclusion that termination of probation does not deprive the court of jurisdiction does not render the release from probation a nullity. Although the court in this case did not apparently[16] set many terms of the probation, the court

---

14. R.C. 2151.011(B)(14).

15. R.C. 2151.23(H).

16. The record before us does not indicate what the terms of probation were. The statute requires the court to provide the juvenile with a written statement of all probation conditions. There is no allegation here that the court failed to comply with that directive.

would have had the authority to require Bracewell to undergo counseling as the court did in *State v. Sapp*,[17] cited by Bracewell, or to require any other condition for probation.[18] Probation also carries with it the duty to report to a probation officer and provide whatever information the probation officer requests.[19] Thus, a release from probation releases the child from the supervision of a probation officer and from any other condition of probation that was placed on him.

Bracewell cites several cases holding that a trial court's jurisdiction over an adult offender and its authority to impose a sentence terminate when the period of probation ends. There is, however, no such provision for termination of the juvenile court's jurisdiction either in the statutes, in the rules of procedure for juvenile court, or in the case law. Rather, the jurisdiction of the juvenile court is contemplated to be continuing.

Bracewell's reliance upon *Sapp, supra*, is also misplaced. First, it is not clear whether in *Sapp* the appellate court and the lower court were applying rules applicable to juveniles or those of the adult criminal-justice system. The appellate court refers to the trial court's imposition of "a sentence of sixty days' incarceration," whereas the juvenile system does not impose "sentences" and clearly prohibits traditional incarceration of a child subject to the court's jurisdiction.[20]

The issue in *Sapp* was whether the lower court had jurisdiction to extend a condition (counseling) of the offender's probation after the initial period of probation had passed. The court held that it did not, a questionable holding after the Ohio Supreme Court's decision in *In re Young Children, supra*, decided after *Sapp*. We do not believe that the *Sapp* case provides any rational support for Bracewell's proposed error here.

The juvenile court in this case had jurisdiction to revoke the suspension of permanent commitment even though Bracewell had been released from official probation. We find no authority for terminating or limiting the ability of the

---

17.  *State v. Sapp* (June 11, 1993), Wood App. No. 92DWD904, unreported, 1993 WL 195856.

18.  See, *e.g., In re Griffin* (Sept. 27, 1990), Union App. No. 14–96–14, unreported, 1996 WL 547921 (conditions of probation included tour of London correctional facility, twenty hours of community service, a five-page essay, and attendance at Tai Chi classes).

19.  See R.C. 2151.14(A) (duties of probation department).

20.  See R.C. 2151.355(A)(12).

juvenile court to take such action,[21] and consequently we overrule Bracewell's assignment of error.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

SHANNON, J., concurs.

PAINTER, J., dissents.

RAYMOND E. SHANNON, J., retired, of the First Appellate District, sitting by assignment.

PAINTER, Judge, dissenting.

I must disagree with the majority's decision because it renders meaningless the juvenile court's order to release Bracewell from probation. The juvenile court placed Bracewell on "official" probation, following a dispositional hearing on May 5, 1995. Nothing in the record provides us any conditions of that probation. On August 27, 1996, the juvenile court entered an order releasing Bracewell from "official" probation and submitting him to the lawful care, custody, and control of his parent, guardian, custodian, and teachers.

Probation is defined by R.C. 2151.011(B)(34) as "[a] legal status created by a court order following an adjudication that a child is delinquent * * *, whereby the child is permitted to remain in the parent's, guardian's, or custodian's home subject to supervision, or under the supervision of any agency designated by the court and returned to the court for violation of probation at any time during the period of probation." The length of probation may be fixed at the dispositional hearing or a later date and may extend until the child is twenty-one.[22]

The record fails to demonstrate the length of Bracewell's probation. Further, there is nothing in the juvenile law statutes or case law that recognizes a distinction between "official" and "unofficial" probation. Thus, based on the record before this court, I can only conclude that Bracewell was released from probation on August 27, 1996.

---

**21.** No challenge to the constitutionality of the juvenile court procedures was presented to us, so we have no cause to consider that question.

**22.** *In re De Geronimo* (June 28, 1979), Cuyahoga App. No. 40089, unreported; Kurtz & Gianelli, Ohio Juvenile Law (1997 Ed.) 282, Section 24.4.

Under the majority's interpretation of the juvenile court's jurisdiction, once a juvenile has been adjudicated delinquent, the juvenile court has never-ceasing jurisdiction over a child to reimpose sanctions for behavior for which the child has already paid the consequences. I believe that this interpretation is in conflict with the goal of the juvenile code—to rehabilitate, not to punish. Thus, while I agree that the juvenile court has original jurisdiction over children based on age, I do not agree that age-specific jurisdiction means "once a delinquent, always a delinquent." In this case, once the juvenile court released Bracewell from probation, it had the jurisdiction, not to impose commitment to DYS for carrying a concealed weapon, but to readjudicate him a delinquent based on his truancy and to provide a disposition consistent with truancy.

There are two situations in which the juvenile court could have imposed its original DYS commitment in this case: (1) if Bracewell had violated the conditions of his May 5, 1995 probation or (2) if the court conditioned the suspended commitment on a separate order of unlimited duration in addition to probation and Bracewell violated that order. In the first situation, the juvenile court could commit a child to DYS, if allowed under the juvenile code, even if the initial disposition did not contain a suspended sentence of commitment.[23] In the second situation, the court's jurisdiction to invoke the suspended commitment would be in effect until Bracewell reached twenty-one.[24] This is because the court has power to suspend a sentence before commitment upon any condition it imposes.[25] Because the record fails to demonstrate either situation, I would have reversed the trial court's judgment.

---

**23.** See *In re Guy* (Mar. 24, 1997), Butler App. No. CA96–10–196, unreported, 1997 WL 133527; *In re Peggy L.* (Dec. 8, 1995), Lucas App. No. L–95–109, unreported, 1995 WL 803443; *In re Kelly* (Nov. 7, 1995), Franklin App. No. 95APF05–613, unreported, 1995 WL 656944; Kurtz & Gianelli, *supra,* at 341–342, Section 30.6.

**24.** See *In re Ravanna T.* (Aug. 1, 1997), Lucas App. No. L–96–371, unreported, 1997 WL 438233; *In re Proctor* (Dec. 24, 1997), Summit App. No. 18257, unreported, 1997 WL 803086.

**25.** See R.C. 2151.49; *In re Proctor, supra.*