JOURNAL ENTRY AND OPINION
{¶ 1} Thirteen-year-old D.B. (appellant) appeals the juvenile court's committing him to the Ohio Department of Youth Services (DYS) for delinquency and alleges that he was denied his right to effective assistance of counsel. After reviewing the facts of the case and pertinent law, we affirm.
 I. {¶ 2} On March 2, 2004, appellant was charged with aggravated arson and criminal damaging, and on April 20, 2004, he was adjudicated delinquent. The court held a hearing on June 14, 2004 and committed appellant to the custody of the court probation officer for placement at Boy's Village, a residential treatment center for troubled youth. In October of 2004 and February, June and August of 2005, the court conducted review hearings and continued appellant's placement at Boy's Village. In an October 6, 2004 journal entry, the court noted that appellant was not making progress at Boy's Village. In a February 24, 2005 journal entry, the court noted the following: "Failure to comply with the rules, conditions and goals of placement may result in a return to court for further placement in a more restrictive setting." On May 10, 2005, appellant's placement officer filed a motion for review and/or amendment of the court's order placing appellant at Boy's Village, stating that appellant "demonstrate[d] a consistent lack of motivation to achieve program goals [and] * * * engaged in theft and defacement of school property."
 {¶ 3} The court held another review hearing on September 6, 2005, and after weighing evidence from appellant's counsel, guardian ad litem and placement officer, the court committed appellant to DYS for a minimum of one year and a maximum not to exceed appellant's 21st birthday.
 II. {¶ 4} In his first assignment of error, appellant argues that "the trial court lacked jurisdiction to impose a sentence to Ohio Department of Youth Services after appellant had served one year at Boy's Village." Specifically, appellant argues that when the court originally placed him in Boy's Village, it did so for a one-year term, and when this term ended, the court lost its jurisdiction to further sentence him.
 {¶ 5} R.C. 2151.23 grants the juvenile court exclusive original jurisdiction over any child adjudicated delinquent. Pursuant to R.C. 2151.38, this jurisdiction continues until the child reaches his or her 21st birthday. Furthermore, Ohio courts have referred to jurisdiction over a juvenile as ongoing.
"A juvenile court has jurisdiction `concerning any child whoon or about the date specified in the complaint is alleged to be'a delinquent child. This jurisdiction is continuing and may beinvoked at any time by motion before the juvenile court. If thechild is ultimately adjudicated delinquent, the court has widelatitude in the order of disposition that it may make. Becausethe purpose of maintaining a juvenile court is different fromthat of the criminal justice system for adults, a juvenile courtis given discretion to make any disposition `that the court findsproper.' The proceedings are considered not criminal but civil innature, and the dispositions ordered by the court are considerednot punitive but rehabilitative."
 In re Dacosta, Lorain App. No. 01CA007877, 2002-Ohio-946, quoting In re Bracewell (1998), 126 Ohio App.3d 133, 136-37.
 {¶ 6} In the case at hand, it is unclear from the record why appellant believes he was originally committed to Boy's Village for a one-year period. The record shows that the court placed appellant at Boy's Village for an indefinite period of time.
 {¶ 7} The most serious offense for which appellant was adjudicated delinquent was aggravated arson, in violation of R.C.2909.02(A)(1), which is a first-degree felony. Pursuant to R.C.2152.16(A)(1), "[i]f a child is adjudicated * * * delinquent * * *, the juvenile court may commit the child to the legal custody of the department of youth services for secure confinement as follows: * * * (c) [f]or a violation of section2909.02, * * * for an indefinite term consisting of a minimum period of one to three years, as prescribed by the court, and a maximum period not to exceed the child's attainment of twenty-one years of age * * *." (Emphasis added.) See, also, In re R.K., Cuyahoga App. No. 84948,2004-Ohio-6918 (holding that R.C. 2151.38 limits the jurisdiction of a juvenile court to cover persons 21 years of age or younger).
 {¶ 8} In the instant case, the court ultimately committed appellant to DYS for a minimum of one year to a maximum of appellant's 21st birthday. This falls within the statutory guidelines for a first-degree felony. Prior to appellant's placement at DYS, the court monitored his progress at Boy's Village by conducting review hearings periodically throughout his 15-month stay. The court made it clear to appellant that he would face more restrictive placement if he did not comply with Boy's Village's rules. As the court stated, appellant had two chances to cooperate with the rehabilitative efforts, and on his third poor performance report, the court made good on its promise to place appellant in a more restrictive setting. Compare, In reCaldwell, 76 Ohio St.3d 156, 1996-Ohio-410 (holding that punishment is not the goal of the juvenile system, except as necessary to direct a child toward the goal of rehabilitation).
 {¶ 9} Accordingly, we hold that the court retained jurisdiction to continue appellant's placement from Boy's Village to DYS until appellant turned 21, and his first assignment of error is overruled.
 III. {¶ 10} In his second assignment of error, appellant argues that "the court abused its discretion in deciding to commit defendant to Ohio Department of Youth Services." Specifically, appellant argues that it was an abuse of discretion to commit him to DYS as a form of punishment, rather than to further his treatment.
 {¶ 11} We review a juvenile court's disposition order under an abuse of discretion standard. See, In re Goudy, Washington App. No. 02CA49, 2003-Ohio-547. "The term `abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. In our analysis of appellant's first assignment of error, we noted that a court's jurisdiction over a juvenile delinquent is ongoing and indefinite, with the goal of rehabilitation in mind.
 {¶ 12} In the instant case, it is clear from the record that, after his year plus stay at Boy's Village, appellant was no longer benefitting from treatment at the center and he was "acting out" by being disruptive to other residents. The court made it known to appellant that if he did not show improvement at Boy's Village via subsequent review hearings, his next step would be commitment in a more restrictive setting. In September 2005, after taking into consideration the probation department's recommendation that appellant may benefit from a stricter atmosphere, the court chose to commit appellant to DYS. The court did nothing more than exactly what it said it would do if appellant did not abide by Boy's Village's rules and show progress in treatment. Given this, we find that the court did not abuse its discretion when committing appellant to DYS. Appellant's second assignment of error is overruled.
 IV. {¶ 13} In his third assignment of error, appellant argues that "the trial court failed in its duty to provide a clear disposition of the case." Specifically, appellant argues that he was never sentenced or placed on suspended sentence and given probation; thus, the "disposition of his case * * * remains in a state of perpetual limbo."
 {¶ 14} Juv.R. 2 defines two types of juvenile court hearings: an adjudicatory hearing to determine whether, among other things, a child is delinquent; and a dispositional hearing to determine what action the court shall take concerning the child. Furthermore, R.C. 2151.35(A)(1) states "[i]f the court at the adjudicatory hearing finds beyond a reasonable doubt that the child is a delinquent * * * child * * *, the court shall proceed immediately, or at a postponed hearing, to hear the evidence as to the proper disposition to be made under section 2151.354 * * * of the Revised Code." The pertinent parts of R.C. 2151.354, which is titled "Disposition of unruly child," state as follows:
"(A) If the child is adjudicated an unruly child, the courtmay:
 "(1) Make any of the dispositions authorized under section2151.353 of the Revised Code;[1]
"* * *
"(4) Commit the child to the temporary or permanent custody ofthe court;
"* * *;
"(6) If, after making a disposition under division (A)(1),(2), or "(3) of this section, the court finds upon furtherhearing that the child is not amenable to treatment orrehabilitation under that disposition, make a dispositionotherwise authorized * * *."
 {¶ 15} In addition, pursuant to R.C. 2151.417 and Juv.R. 36(A), when the court makes a disposition of a delinquent child which places the child into the temporary custody of the county department of human services, the court is then required to hold periodic reviews of the placement.
 {¶ 16} Given the above statutory mandates and guidelines, it is fair to say that a juvenile court can more or less have its druthers when issuing dispositional orders regarding delinquent children. As such, the body of law we look to in reviewing an allegation of an "unclear" disposition, such as the one before us, is topsy-turvy to say the least. In contrast, the adult felony sentencing statutes, which have recently been demoted by the Ohio Supreme Court from being mandatory to being discretionary,[2] are painstakingly specific, detailed and lengthy. These guidelines may not be crystal clear, but their supply is well stocked.
 {¶ 17} In the instant case, the court's June 16, 2004 journal entry reads as follows: "The child is committed to the custody of the court probation officer, for placement at Boy's Village * * *." After this attempt at treatment failed, on September 7, 2005, the court ordered that the
"child is committed to the Ohio Department of Youth Servicespursuant to Section 2152.16(A)(1)(d) of the Ohio Revised Code forinstitutionalization in a secure facility for an indefinite termconsisting of a minimum period of one (1) year and a maximumperiod not to exceed the child's attainment of the age oftwenty-one (21) years as to Count 1, Aggravated Arson, inviolation of Ohio Revised Code 2909.02(A)(1), a felony of thefirst degree."
 {¶ 18} Furthermore, in between the June order and the September order, the court held a number of review hearings as mandated by R.C. 2151.417.
 {¶ 19} Taking into consideration the catch-all provisions of R.C. 2151.354 (5) and (6), we find that the court's originally placing appellant in Boy's Village and subsequently committing him to DYS upon his not being amenable to treatment or rehabilitation, were both acceptable disposition orders. Accordingly, the court did not fail to provide a clear disposition leaving appellant in limbo, and his third assignment of error is overruled.
 V. {¶ 20} In his fourth and final assignment of error, appellant argues that he "was denied his right to effective assistance of counsel at the hearing on September 6, 2005, when his attorney failed to take testimony of the state's witness and failed to present any witnesses on behalf of appellant in violation of Article I, Section 10 of the Ohio Constitution and the Sixth andFourteenth Amendments to the United States Constitution."
 {¶ 21} In order to substantiate a claim of ineffective assistance of counsel, an appellant must demonstrate that 1) the performance of defense counsel was seriously flawed and deficient, and 2) the result of appellant's trial or legal proceeding would have been different had defense counsel provided proper representation. Strickland v. Washington (1984),466 U.S. 668; State v. Brooks (1986), 25 Ohio St.3d 144. In Statev. Bradley, the Ohio Supreme Court truncated this standard, holding that reviewing courts need not examine counsel's performance if appellant fails to prove the second prong of prejudicial effect. State v. Bradley (1989), 42 Ohio St.3d. "The object of an ineffectiveness claim is not to grade counsel's performance." Id. at 142.
 {¶ 22} In the instant case, appellant argues that counsel was deficient when failing to cross-examine the placement officer, "whose negative remarks concerning appellant's record at Boy's Village thereby went unchallenged." However, appellant presents no evidence that cross-examination would have changed the outcome of his case. Additionally, it has been held that witness testimony, or lack thereof, is a matter of trial maneuvers and should not be considered flawed or deficient performance in an ineffective assistance of counsel claim.
"Decisions regarding the calling of witnesses concern defensecounsel's trial strategy. The failure to call witnesses for atrial is not a substantial violation of defense counsel'sessential duty absent a showing of prejudice. The defendant mustdemonstrate that the testimony would be a significant assistanceto the defense to prove ineffectiveness. Otherwise, the failureto present witnesses is within the realm of trial tactics and notconsidered ineffective assistance of counsel unless prejudiceresults."
 State v. Montana (Mar. 24, 1994), Cuyahoga App. No. 65024 (internal citations omitted). See, also, State v. McDaniel
(Oct. 24, 1997), Miami App. No. 97-CA-7.
 {¶ 23} Accordingly, appellant's fourth and final assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Cuyahoga Court of Common Pleas, Juvenile Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Celebrezze, Jr., P.J., and Blackmon, J., concur.
[1] R.C. 2151.353 governs the disposition of abused, neglected or dependent children, which, along with delinquency, are the two subject matters that form the basis of all juvenile court proceedings. Subsection (A)(2) of this statute states that the court may make an order of disposition "commit[ting] the child to the temporary custody of * * * a probation officer for placement in * * * any other home approved by the court."
[2] See, State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856;State v. Mathis, 109 Ohio St.3d 54, 2006-Ohio-855.