OPINION
{¶ 1} Appellants, Emily and Corbin H., separately appeal a decision of the Preble County Court of Common Pleas, Juvenile Division, granting permanent custody of their three children to the Preble County Job and Family Services, Children Services Division ("the agency"). For the reasons that follow, we reverse and remand the trial court's judgment.
¶ 2} Appellants are the parents of J.H. (born in June 1999), S.H. (born in March 2002), and C.H. (born in October 2003). In September 2002, then six-month-old S.H. was taken to the emergency department of the Dayton's Children's Medical Center because of a decreased level of alertness. In his written inpatient consultation, Dr. Ralph Hicks, the examining physician, assessed S.H.'s head injuries (both recent and older) and multiple retinal hemorrhages as being consistent with shaken baby syndrome. Dr. Hicks also stated that S.H. and her sister J.H. "should not be considered safe in their present home environment." As a result, the agency filed two complaints alleging that J.H. was a dependent child and that S.H. was a dependent and abused child. The agency also moved for and was granted temporary custody of J.H. and S.H. A case plan was developed for both parents.
¶ 3} In February 2003, Emily pled guilty to and was convicted of child endangering for the injuries suffered by S.H. That same month, during a change of plea hearing, Emily admitted the agency's allegations of dependency and abuse regarding J.H. and S.H. The pleas were journalized in an entry filed the same month. With regard to Corbin, while he initially denied the agency's allegations, he eventually withdrew his pleas of deny and entered pleas of admit but only to the facts that he was residing with his wife Emily "when any alleged incident occurred," and that "there are no allegations that [he] was the cause of any alleged abuse and he is trying to reunify his family as quickly as possible." It is undisputed that after appellants' pleas, the trial court did not make a finding that J.H. was a dependent child or that S.H. was a dependent and abused child.
¶ 4} Nonetheless, all the parties proceeded as if the trial court had made those findings. Temporary custody of J.H. and S.H. remained with the agency. Eventually, appellants completed their case plan. In October 2003, Emily gave birth to a son, C.H.; and J.H. was returned to appellants. In January 2004, S.H. was returned to appellants. By entry filed on March 23, 2004, the trial court ordered that custody of J.H. and S.H. be returned to appellants but ordered the agency to retain protective supervision.
¶ 5} On April 12, 2004, while home with her mother and siblings, S.H. became non responsive. S.H. was then two years old. Appellants did not call 911 but instead drove 30 minutes to a hospital in Greenville, Ohio even though another hospital was closer to their home. S.H. had multiple bruises, bite marks, and was in considerable distress. Emily explained that S.H. had choked on a peanut butter sandwich. Against the wishes of her parents, S.H. was careflighted to Dayton's Children's Medical Center where she was examined by Dr. Hicks. S.H. was lethargic, had to be stimulated vigorously so that she would respond and wake up, and had numerous bruises on her face, neck and trunk, as well as adult bite marks. It was later determined that the bite marks were from Emily. Dr. Hicks also found four different bone fractures, three of which were in the healing process. S.H. had to have fluid drained from her head to relieve pressure on her brain. As a result of her injuries, S.H. was hospitalized for nine days, and has had several surgeries since.
¶ 6} On April 14, 2004, the agency filed a motion seeking permanent custody of J.H. and S.H. The agency also filed a complaint alleging that C.H. was a dependent child and seeking permanent custody of the child. Following a shelter care hearing that day, the agency was granted temporary custody of all three children. Two weeks later, appellants filed written pleas of deny in all three cases. A full hearing (the "permanent custody") was then scheduled for June 2004. Due to several continuances filed by Emily and/or Corbin (due to a criminal case pending against Emily) and a continuance filed by the state, the permanent custody hearing was not held until May and July 2005. Meanwhile, Emily was convicted of child endangering (a felony of the second degree) for the injuries suffered by S.H. in 2004, and sentenced to prison for two years.
¶ 7} On October 18, 2005, the trial court granted permanent custody of all three children to the agency. In its decision, the trial court found that C.H. was a dependent child. With regard to J.H. and S.H., the court acknowledged that although it had accepted appellants' 2003 pleas of admit that J.H. was a dependent child and that S.H. was a dependent and abused child, it had never adjudicated the two children to be dependent and/or abused children. The trial court then found, "based upon the pleas," that J.H. was a dependent child and that S.H. was a dependent and abused child, and made those findings "nunc pro tunc to the date the pleas were entered, March 21, 2003." After adjudicating all three children to be dependent and/or abused children, the trial court then terminated appellants' parental rights and granted permanent custody to the agency. This appeal follows in which appellants each raise two assignments of error. Because it resolves all the issues on appeal, Emily's second assignment of error will be addressed first.
¶ 8} Emily's Assignment of Error No. 1:
¶ 9} "THE APPELLANT'S ADMISSION WAS NOT KNOWING, INTELLIGENT AND VOLUNTARY IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, ARTICLE 1, SECTIONS 10 AND 16
OF THE OHIO CONSTITUTION, AND RULE 29 OF THE OHIO RULES OF JUVENILE PROCEDURE, WHERE THE TRIAL COURT FAILED TO ADEQUATELY EXPLAIN THE NATURE OF THE ALLEGATIONS, THE RIGHTS WAIVED BY ENTERING AN ADMISSION, AND THE CONSEQUENCES OF HER ADMISSION."
¶ 10} Emily's Assignment of Error No. 2:
¶ 11} "THE TRIAL COURT ERRED IN PROCEEDING WITH DISPOSITION PRIOR TO AN ADJUDICATION OF DEPENDENCY."
¶ 12} Corbin's Assignment of Error No. 1:
¶ 13} "THE LOWER COURT'S DECISION GRANTING PERMANENT CUSTODY TO PREBLE COUNTY CHILDREN SERVICES IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
¶ 14} Corbin's Assignment of Error No. 2:
¶ 15} "THE LOWER COURT ABUSED ITS DISCRETION BY NOT CONSIDERING OTHER OPTIONS AVAILABLE TO IT SHORT OF PERMANENT CUSTODY PURSUANT TO [R.C.] 2151.353."
¶ 16} In her second assignment of error, Emily argues that the trial court erred by adjudicating her three children to be dependent and/or abused children and by proceeding with a disposition of permanent custody all at the same time. Emily argues that under Juv.R. 34(A) and R.C. 2151.35(B)(1), an adjudication of abuse and/or dependency is "required before the trial court can proceed with disposition." Emily argues that the trial court erred by failing to bifurcate the permanent custody hearing into two separate adjudicatory and dispositional hearings in violation of Juv.R. 34(A) and R.C. 2151.35(B)(1). Both provisions forbid a trial court, once a child has been adjudicated abused, neglected, or dependent, from issuing a dispositional order until after the court holds a separate dispositional hearing. Both provisions, on the other hand, also allow a trial court to hold the dispositional hearing immediately after the adjudicatory hearing if some conditions are met.
¶ 17} We first start with J.H. and S.H. We agree that the trial court improperly granted permanent custody of these two children to the agency, albeit for different reasons.
¶ 18} The agency filed a motion seeking permanent custody of J.H. and S.H. in April 2004. The two children were first placed in the temporary custody of the agency in September 2002. We note at the outset that we disagree with the guardian ad litem's ("GAL") assertion that the trial court's decision granting permanent custody of all three children to the agency occurred in the context of a new case completely different from the case originated in 2002. The GAL is correct that following S.H.'s hospitalization in 2004, new case numbers were assigned to each of the three children. Those new case numbers were, for the most part, used consistently throughout the proceedings until the trial court's 2005 decision. Yet, the record also shows that identification numbers assigned to J.H. and S.H. back in 2002 were never changed and remained the same until the trial court's 2005 decision. In addition, although custody of J.H. and S.H. was returned to appellants in March 2004, the agency's involvement in the case did not end. Instead, the agency retained protective supervision.
¶ 19} The record shows that after the agency moved for permanent custody of all three children, appellants both filed written pleas of deny in all three cases.[1] We find that by filing those pleas, appellants withdrew their 2003 pleas regarding J.H. and S.H. Because appellants' 2003 pleas were withdrawn, the trial court could not adjudicate J.H. and S.H. to be dependent and/or abused based on those 2003 pleas. Following appellants' 2004 pleas of deny, the trial court never adjudicated J.H. and S.H. before it granted permanent custody of the two children to the agency.
¶ 20} We therefore find that the trial court improperly granted permanent custody of J.H. and S.H. to the agency without a proper adjudication, in violation of R.C. Chapter 2151 and Juv.R. 29(F) and 34. We thus reverse both the trial court's finding that J.H. is a dependent child and that S.H. is a dependent and abused child, and its decision granting permanent custody of J.H. and S.H. to the agency and terminating both appellants' parental rights with regard to the two children. We remand this matter to the trial court for further action in accordance with the law and consistent with this opinion.
¶ 21} Emily's second assignment of error is therefore sustained with regard to J.H. and S.H. In light of the foregoing holding, we find that Corbin's two assignments of error are moot with regard to J.H. and S.H. Likewise, we find that Emily's first assignment of error is moot with regard to J.H. and S.H.[2]
 ¶ 22} We now turn to C.H. As noted above, Emily argues that the trial court erred by failing to bifurcate the permanent custody hearing into two separate adjudicatory and dispositional hearings in violation of Juv.R. 34(C) and R.C. 2151.35(B)(1).
¶ 23} The complaint filed by the agency with regard to C.H. both alleged that the child was dependent and sought permanent custody of the child. The record clearly shows that although C.H. had been in the agency's temporary custody for several months when the permanent custody hearing was finally held in May and June 2005, the agency's complaint was not a motion to convert temporary custody to permanent custody under R.C. 2151.414, even though it cited R.C. 2151.414. Rather, the agency was seeking permanent custody of C.H. based upon an original complaint for custody. Indeed, this was the first time that the agency was alleging that C.H. was a dependent child.
¶ 24} A review of the applicable juvenile rules and R.C. Chapter 2151 shows that a bifurcated hearing is required where there are two issues to be decided. See In re Lyons (Aug. 11, 1987), Ross App. No. 1411. On a motion for permanent custody under R.C. 2151.414, where a child has already been adjudicated dependent, there is only one issue to decide, to wit: either the motion is granted, in which case the parental rights are terminated, or else the motion is denied. See id.; In re Jones
(1985), 29 Ohio App.3d 176. Here, however, because the agency was seeking permanent custody of C.H. based upon an original complaint for custody, we find that the Ohio Supreme Court's decision in In re Baby Girl Baxter (1985), 17 Ohio St.3d 229, applies.
¶ 25} In Baxter, as in our case, the agency filed a complaint in a juvenile court alleging that the child was a dependent child and seeking permanent custody of the child. As in our case, the juvenile court held a single evidentiary hearing simultaneously covering the adjudication and disposition of the status and custody of the child. The juvenile court found the child to be dependent and terminated the mother's parental rights. The supreme court reversed the juvenile court's decision, stating: "The law commands that the proceedings be bifurcated into separate adjudicatory and dispositional hearings because the issues raised and the procedures used at each hearing differ. * * * Accordingly, we find that the trial court committed reversible error * * * by not bifurcating the adjudicatory and dispositional hearings." Id. at 233.
¶ 26} The supreme court stated that under Juv.R. 29, an adjudicatory hearing must first take place. The purpose of this hearing is to explore the merits of the allegations in the complaint for custody and determine if the child in question is in fact dependent. The second hearing required by the Juvenile Rules is a so-called dispositional hearing, which is held for the purpose of determining what should be done with the child in light of the adjudicatory finding. The dispositional hearing focuses on the best interest of the child in light of the adjudicatory hearing. See Baxter at 233; In re Bryant (June 28, 1985), Butler App. No. CA84-10-114.
¶ 27} While the Juvenile Rules clearly provide that there shall be two separate hearings, they do not require that these hearings necessarily be held on different days or at separate times. See Bryant. Juv.R. 29(F)(2) provides that the court, after holding an adjudicatory hearing, may "enter an adjudication and proceed forthwith to disposition * * *," and Juv.R. 34 states that a dispositional hearing may be held immediately following the adjudicatory hearing or at a later time fixed by the court. Regardless of when the hearings are held, however, there must be a definitive bifurcation of the proceedings so that the parties are afforded an opportunity to present evidence at both the adjudicatory and dispositional hearings. Id.
¶ 28} In the case at bar, the trial court made both an adjudicative finding (that C.H. was a dependent child) and a dispositional finding (that it was in the best interest of the child to be placed in the permanent custody of the agency) following a single hearing held in May 2005 and continued in June 2005. The transcript of the proceedings reveals no explicit demarcation between the adjudicatory and dispositional stages as required under Baxter and the Juvenile Rules. Because the trial court was acting upon an original complaint for custody, it was required to bifurcate the permanent custody hearing as required by Juv.R. 29 and 34. See Baxter. We thus find that the trial court erred by failing to bifurcate the permanent custody hearing with regard to C.H.
¶ 29} We reject the state's argument that the trial court was not required to bifurcate the permanent custody hearing because the parties were served with notice of the hearing and had all the documents required for the hearing in compliance with R.C.2151.35(B)(1). A review of R.C. 2151.35(B)(1) shows that it is inconsistent with Juv.R. 34(A). R.C. 2151.35(B)(1) allows a trial court to "hold the dispositional hearing for an adjudicated * * * dependent child immediately after the adjudicatory hearing if all parties were served prior to the adjudicatory hearing with all documents required for the dispositional hearing." By contrast, Juv.R. 34(A) is stricter because it also requires that "all parties consent to the dispositional hearing being held immediately after the adjudicatory hearing."
¶ 30} It is well-established that in instances of procedural conflict, Juveniles Rules, which were prepared and submitted by the Ohio Supreme Court to the legislature, must control over inconsistent statutory provisions purporting to govern procedural matters. See In re Vickers Children (1983), 14 Ohio App.3d 201;In re Jones (1985), 29 Ohio App.3d 176. In the case at bar, while the parties may have been served before the permanent custody hearing with all the documents required for the hearing, there is no evidence in the record that appellants consented to the dispositional hearing being held immediately after the adjudicatory hearing. The trial court therefore did not comply with Juv.R. 34(A).
¶ 31} We also reject the arguments by the state and the GAL that the bifurcation issue is waived because Emily failed to object to the procedure during the course of the hearings and/or failed to request bifurcation of the proceedings. At the beginning of the May 2005 hearing, the state told the trial court that (1) while the complaint for C.H. sought permanent custody of the child, C.H. had not yet been adjudicated dependent; (2) because C.H. had not been adjudicated, it was not clear whether there would be a motion to bifurcate disposition on that complaint; and (3) the GAL's suggestion to amend the complaint so that appellants would admit to the dependency allegation was rejected by their attorneys. At that point, the trial judge stated: "So basically * * * we are going forward with the motion for permanent custody of [J.H. and S.H.] * * * and then forward on the adjudication issue of uh, dependency on [C.H.] * * * [w]hich in it contains a complaint for permanent custody?"
¶ 32} We find that the foregoing exchange does not clearly put the parties on notice that the trial court intended to hold only one single evidentiary hearing simultaneously covering the adjudication and disposition of the status and custody of C.H. Rather, it appeared that the trial court was going forward with the adjudication issue first. Emily was therefore not required to bring the issue to the attention of the trial court or request for a bifurcation.
¶ 33} The GAL cites In re Bolden (1973), 37 Ohio App.2d 7, for the proposition that "error cannot be predicated on the [trial court's] holding an adjudicatory hearing and a dispositional hearing at the same time unless the record affirmatively shows that [Emily] requested bifurcation of the proceedings and said request was denied." We find that Bolden
is distinguishable from the case at bar.
¶ 34} In Bolden, relying on Juv.R. 34(A), the parents of a delinquent juvenile challenged the trial court's failure to grant a continuance between adjudication and disposition so that they could obtain or consult an attorney. Juv.R. 34(A) states that "where the dispositional hearing is to be held immediately following the adjudicatory hearing, the court, upon the request of a party, shall continue the hearing for a reasonable time to enable the party to obtain or consult counsel." Neither the parents nor the juvenile asked for a continuance. The appellate court found that once the juvenile was found to be a delinquent child, had either the juvenile or his parents requested a continuance, the trial court would have been required to continue the hearing to enable them to obtain or consult an attorney before the court could proceed with the dispositional hearing. However, in the absence of such a request, error could not be predicated on the trial court's holding the dispositional hearing immediately following the adjudicatory hearing. Id. at 14-15. Because C.H. was found to be a dependent child at the same time that permanent custody was granted to the agency, Bolden does not apply to the case at bar.
¶ 35} Finally, we reject the GAL's argument that the permanent custody hearing did not need to be bifurcated because the trial court was proceeding with a permanent custody motion. In support of his argument, the GAL cites Jones,29 Ohio App.3d 176, and Juv.R. 34(I), which states that "Hearings to determine whether temporary orders regarding custody should be modified to orders for permanent custody shall be considered dispositional hearings and need not be bifurcated." The GAL's argument assumes that the agency's complaint for custody was simply a motion to convert a temporary custody into permanent custody under R.C.2151.414. However, we have already held that the trial court was proceeding upon an original complaint for permanent custody in which C.H. had not been adjudicated dependent yet, and not upon a R.C. 2151.414 motion to convert temporary custody to permanent custody. Bifurcation was therefore required. See Baxter andJones.
 ¶ 36} In light of the foregoing, we find that the trial court erred by finding C.H. to be a dependent child, by granting permanent custody of the child to the agency, and by terminating appellants' parental rights. We therefore reverse the trial court's finding that C.H. is a dependent child, its grant of permanent custody to the agency, and its decision terminating both appellants' parental rights, and remand this matter to the trial court for further action in accordance with the law and consistent with this opinion. Emily's second assignment of error is accordingly sustained with regard to C.H. In light of the foregoing holding, Corbin's two assignments of error are moot with regard to C.H.
¶ 37} It should be noted that it is not the intention of this court to suggest that the trial court is forbidden, upon remand, from finding J.H. and C.H. to be dependent and from finding S.H. to be dependent and abused, and from terminating appellants' parental rights with regard to all three children. However, because the trial court's 2005 decision was predicated on the errors as found above, it cannot stand. The trial court may order that all three children remain in the temporary custody of the agency pending further legal proceedings.
¶ 38} Judgment reversed and remanded.
Powell, P.J., and Bressler, J., concur.
[1] We acknowledge that appellants' written pleas of deny only had one case number, C.H.'s case number. However, the caption of these pleas listed all three children, listed their identification numbers, and the pleas were filed in each of the children's cases. As a result, we find that the pleas were entered for all three children.
[2] In her first assignment of error, Emily argued that the trial court's failure to comply with Juv.R. 29(D) before accepting her 2003 pleas of admit regarding J.H. and S.H. constituted prejudicial error that required a reversal of the two children's adjudication. It is well established that under Juv.R. 29(D), a trial court must personally address the person making the admission to ascertain whether the admission was voluntarily made or whether the person had a complete understanding of the consequences of entering such admission. See In re Keltner
(Aug. 10, 1998), Butler App. No. CA97-10-188. On appeal, the state conceded that the trial court failed to comply at all with Juv.R. 29(D). However, in light of our holding, under Emily's second assignment of error, reversing and remanding the grant of permanent custody of the two children to the agency for lack of a proper adjudication, we find that Emily's first assignment of error is moot.