[This decision has been published in *Ohio Official Reports* at 96 Ohio St.3d 328.]

IN RE CROSS.

[Cite as *In re Cross*, 2002-Ohio-4183.]

*Juvenile court—Juvenile court does not have jurisdiction to reimpose a suspended*
*commitment to the Department of Youth Services facility after a juvenile has*
*been released from probation.*

(No. 2001-0152—Submitted December 12, 2001—Decided September 11, 2002.)

APPEAL from the Court of Appeals for Stark County, No. 2000CA00122.

_____

SYLLABUS OF THE COURT

A juvenile court does not have the jurisdiction to reimpose a suspended
commitment to a Department of Youth Services facility after a juvenile has
been released from probation.

_____

PFEIFER, J.

{¶1} In this case we address the issue of whether a juvenile court has the
jurisdiction to reimpose a suspended commitment to a Department of Youth
Services facility after a juvenile has been released from probation. We find that a
juvenile court has no such jurisdiction.

Factual Background

{¶2} Appellant Clayton Cross was charged with one count of delinquency
for burglary on February 10, 1998, in case No. J-101241. On February 23, 1998,
Cross admitted the charge of burglary, a second degree felony if committed by an
adult (R.C. 2911.12[C]), and was committed by the Stark County Juvenile Court to
the Department of Youth Services ("DYS") for a minimum of six months and a
maximum not to exceed his twenty-first birthday. The commitment was stayed on
the condition of no further violation, and Cross was placed on probation for an

indefinite period. The sentence was later amended through a nunc pro tunc entry to a minimum DYS commitment of one year. Cross was fifteen years old at the time.

{¶3} While on probation, Cross was ordered to "participate and obey terms and conditions set forth by the Probation Department and to obey all parental rules and all laws." Further court-ordered conditions were good behavior at home, in school, and in the community, and mandatory school attendance. The court did not spare Cross entirely from confinement—it also remanded him to the Multi-County Juvenile Attention Center for 75 days.

{¶4} On December 28, 1998, Cross received a general release from probation after serving his seventy-five-day commitment to the Attention Center.

{¶5} Cross found himself back before the juvenile court about one year later. On December 3, 1999, Cross was charged with one count of petty theft, a first degree misdemeanor if committed by an adult, R.C. 2913.02(B)(2), for stealing a bicycle, in case No. J-109845. On December 17, 1999, in case No. J-110042, Cross was charged with unruliness, an unclassified offense, upon a complaint by his mother that he refused to follow parental rules, left home without permission, and was violent and physically aggressive with her. On March 22, 2000, Cross admitted the offenses in both cases.

{¶6} The juvenile court, ruling that Cross had violated the prior court order in committing these offenses, rescinded the stay and imposed the previously suspended felony commitment on the earlier burglary charge. The court did not find that Cross had committed a probation violation. The court remanded Cross to the Attention Center pending transfer to the Circleville Youth Center.

{¶7} Cross appealed the juvenile court ruling to the Court of Appeals for Stark County, challenging the juvenile court's authority to reimpose the prior DYS commitment. The court of appeals ruled that R.C. 2151.353 provides the juvenile court with continuing jurisdiction over any child for whom the court issues an order

of disposition until the child turns eighteen. The court noted that since juvenile proceedings are not criminal but civil in nature, juveniles are not due some of the same rights that criminal defendants are. The court of appeals found that the juvenile court did not err in reimposing the earlier commitment.

{¶8} The cause is before this court upon the allowance of a discretionary appeal.

Law and Analysis

{¶9} The authority and responsibility of Ohio's juvenile courts is wide-ranging. Juvenile courts are entrusted with the oversight of children adjudged abused, neglected, or dependent, as well as those who are adjudged delinquent. The framework of former R.C. Chapter 2151, as it existed when Cross committed the act with which he was charged, recognized that the juvenile court's authority and oversight differ depending on whether the child is alleged delinquent or nondelinquent.

{¶10} The appellate court based its decision partly on its interpretation of R.C. 2151.353, stating that pursuant to that statute "the Juvenile Court retains jurisdiction over any child for whom the court issues an order of disposition until the child attains the age of eighteen." Actually, the court retains jurisdiction only over juveniles for whom the court issues an order of disposition pursuant to R.C. 2151.353. The children that R.C. 2151.353 directly addresses are abused, neglected, or dependent. The dispositional orders available to the judge (protective supervision, temporary or permanent custody to a children services agency, removal from the home, etc.) reflect the children's status. Abused, neglected, and dependent children are in situations not of their own making, and the court provides protection to them. The juvenile court retains jurisdiction over those children to ensure their safety and proper treatment until they become adults. The mechanism for the juvenile court's continued oversight is R.C. 2151.353(E)(1), wherein the court retains jurisdiction until the age of 19 over children "for whom the court

issues an order of disposition pursuant to division (A) of this section." R.C. 2151.353(A) deals exclusively with abused, neglected, or dependent children.

{¶11} Former R.C. 2151.355, on the other hand, dealt with the disposition of children adjudged delinquent. See 147 Ohio Laws, Part I, 1125. (R.C. 2151.355 was repealed effective January 1, 2002, by the Juvenile Justice Reform Act, 2000 Sub.S.B. No. 179, Section 4. The dichotomy between the treatment of juveniles alleged to be abused, neglected, or dependent was made even sharper by the Act, which created new R.C. Chapter 2152 to deal exclusively with juvenile delinquency.) Pursuant to former R.C. 2151.355(A), a juvenile court could employ some of the dispositional options available under R.C. 2151.353. Thus, if a juvenile court issued a dispositional order available under former R.C. 2151.353(A), a juvenile court could retain jurisdiction over that person as to that disposition.

{¶12} In this case, however, the disposition was made entirely outside former R.C. 2151.353. Cross's disposition was made pursuant to former R.C. 2151.355(A)(2) (the court may place the child on probation), (A)(3) (the court may commit the child "to the temporary custody of any * * * facility operated for the care of delinquent children by the county"), and (A)(5)(c) (the court may "commit the child to the legal custody of the department of youth services for institutionalization in a secure facility for an indefinite term consisting of a minimum period of one year and a maximum period not to exceed the child's attainment of twenty-one years of age."). 147 Ohio Laws, Part I, 1125-1127. Since the court's orders as to Cross were not made pursuant to R.C. 2151.353(A), the continuing jurisdiction granted by R.C. 2151.353(E)(1) does not apply in this case. There is no statutory basis for the court's continuing jurisdiction here.

{¶13} However, the appellate court also relied on the case of *In re Bracewell* (1998), 126 Ohio App.3d 133, 709 N.E.2d 938. Bracewell was charged with carrying a concealed weapon, a third-degree felony if committed by an adult. He admitted the charge and was adjudged a delinquent child. The court ordered

him permanently committed to DYS, but suspended the commitment, put Bracewell on official probation, and ordered that he be placed with his mother. On August 27, 1996, Bracewell was released from probation. In November 1996, due to several other incidents, the court revoked the suspension of the permanent commitment to DYS and ordered him committed to DYS for an indefinite term of at least six months. The appellate court affirmed the actions of the juvenile court.

{¶14} The court in *Bracewell* cited this court's decision in *In re Young Children* (1996), 76 Ohio St.3d 632, 669 N.E.2d 1140, in reaching its judgment. In *In re Young Children* this court faced the issue of whether a juvenile court may retain jurisdiction to enter dispositional orders after the passing of the statutory time period ("sunset date") for making such orders. The children in *In re Young Children* were dependent and/or neglected. The juvenile court had awarded temporary custody to the local Department of Human Services. Pursuant to R.C. 2151.353(F), such orders are usually operative for only one year, unless extended by motion from the agency pursuant to R.C. 2151.415. R.C. 2151.415(A) requires that the motion be made no later than thirty days before either the expiration of the temporary custody order then in effect or the dispositional hearing to be held under that section. In *In re Young Children*, the agency missed the deadline for the filing of a motion for an extension of the custody order. This court held that the jurisdictional grant of R.C. 2151.353(E)(1) was not limited:

{¶15} "It seems abundantly clear that this provision was intended to ensure that a child's welfare would always be subject to court review. That is, given that a child, by virtue of being before the court pursuant to R.C. Chapter 2151, was at risk of some harm, the General Assembly provided for the child's safety and welfare by ensuring that the juvenile court would retain jurisdiction over the child through the age of majority. R.C. Chapter 2151 places no limitation on this general jurisdiction."

**{¶16}** Accordingly, this court held that as to neglected or dependent children, the juvenile court's continuing jurisdiction could allow for further dispositional orders from the court in order to protect a child.

**{¶17}** In *In re Young Children*, this court was dealing with dependent or neglected children, which made R.C. 2151.353 directly applicable. This court was addressing the protection of children from dangerous situations not of their own making.

**{¶18}** The *Bracewell* court extended our holding in *In re Young Children* to the realm of juvenile delinquency:

**{¶19}** "Because juvenile court proceedings are not criminal but civil in nature, and are designed to provide for the care, protection, and mental and physical development of children who engage in what otherwise would be criminal behavior, the reasoning of the court in *Young*, involving neglected or dependent children, is equally applicable here." (Footnote omitted.) Id., 126 Ohio App.3d at 138, 709 N.E.2d 938.

**{¶20}** We disagree with the *Bracewell* court's reasoning. In *Young*, we were applying R.C. 2151.353 to situations involving dependent or neglected children. We were dealing with the protection of children, not the detention of children. We applied the statute to the persons for whom it was designed.

**{¶21}** Further, the characterization of delinquency proceedings as civil is one of limited applicability. While this court has held, in *In re Anderson* (2001), 92 Ohio St.3d 63, 748 N.E.2d 67, syllabus, that a juvenile court proceeding generally is a civil action, this court also noted that "there are criminal aspects to juvenile court proceedings" and that "the United States Supreme Court has carefully imposed basic due process requirements on [the juvenile justice system]." Id. at 66 and 65, 748 N.E.2d 67.

**{¶22}** The United States Supreme Court has held that the idealism that created juvenile courts must not be allowed to obscure the fact that a child adjudged

delinquent is threatened with a substantial infringement of his liberty. "[C]ivil labels and good intentions do not themselves obviate the need for criminal due process safeguards in juvenile courts, for '[a] proceeding where the issue is whether the child will be found "delinquent" and subjected to the loss of his liberty for years is comparable in seriousness to a felony prosecution.' " *In re Winship* (1970), 397 U.S. 358, 365-366, 90 S.Ct. 1068, 25 L.Ed.2d 368, quoting *In re Gault* (1967), 387 U.S. 1, 36, 87 S.Ct. 1428, 18 L.Ed.2d 527

{¶23} In *In re Gault*, the court held that the Due Process Clause requires application of " 'the essentials of due process and fair treatment' " in a juvenile adjudicatory hearing. 387 U.S. at 30, 87 S.Ct. 1428, 18 L.Ed.2d 527, quoting *Kent v. United States* (1966), 383 U.S. 541, 562, 86 S.Ct. 1045, 16 L.Ed.2d 84. In *Breed v. Jones* (1975), 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346, the court included in the essentials of due process the protection of the Double Jeopardy Clause of the Fifth Amendment. In *Breed*, the court reiterated its remarks in *Gault* regarding the reality of the juvenile court system:

{¶24} "Although the juvenile-court system had its genesis in the desire to provide a distinctive procedure and setting to deal with the problems of youth, including those manifested by antisocial conduct, our decisions in recent years have recognized that there is a gap between the originally benign conception of the system and its realities. * * * [T]he court's response to that perception has been to make applicable in juvenile proceedings constitutional guarantees associated with traditional criminal prosecutions." 421 U.S. at 528-529, 95 S.Ct. 1779, 44 L.Ed.2d 346.

{¶25} There is a clear difference between the role and power of the juvenile court in delinquency matters as opposed to matters involving abused or neglected children. The criminal aspects of juvenile delinquency proceedings require greater constraints on juvenile courts. We therefore reject the holding of the *Bracewell*

court making R.C. 2151.353(E)(1) applicable to matters arising under former R.C. 2151.355.

{¶26} Still, even without R.C. 2151.353, a juvenile court has the power to oversee a child adjudged delinquent. Pursuant to former R.C. 2151.355, and now under R.C. Chapter 2152, a court has leeway in fashioning an appropriate disposition for a delinquent child. Available dispositional orders under former R.C. 2151.355(A) included probation, commitment to youth facilities, restitution, curfews, school attendance requirements, community service, and others. Pursuant to former R.C. 2151.355(A)(2), the juvenile court could "[p]lace the child on probation *under any conditions that the court prescribes*." (Emphasis added.) Thus, the juvenile court has very few restrictions on how it might impose probation, including the behavioral requirements it deems appropriate for an individual child.

{¶27} The court's ability to impose probation in a very broad and creative way creates the tether that allows a court to maintain some connection with a juvenile delinquent. The probationary period can be indefinite. The threat of actual incarceration, however, lasts only as long as the probation lasts. This contrasts with the power granted to juvenile courts by R.C. 2151.49 to suspend indefinitely, without probation, incarceration of an adult who violates a provision of R.C. Chapter 2151. There is no similar statutory authority that allows a juvenile court to suspend a DYS commitment outside of probation.

{¶28} Thus, the completion of probation signals the end of the court's jurisdiction over a delinquent juvenile. As with adults, a "court [loses] its jurisdiction to impose * * * suspended sentences once the term of probation expire[s]." *State v. Yates* (1991), 58 Ohio St.3d 78, 80, 567 N.E.2d 1306. Cross was granted a general release from probation on December 28, 1998. At that time he had completed the punishment he had received on February 23, 1998. By that point he had served seventy-five days in his county's Attention Center, as well as over nine months of probation. The court's original grant of probation was

indefinite. When the court ended Cross's probation, it ended its ability to make further dispositions as to Cross on that delinquency count.

{¶29} Since the juvenile court lacked jurisdiction to reimpose Cross's suspended sentence, it had no authority to commit Cross to a DYS facility. Accordingly, we reverse the judgment of the court of appeals.

Judgment reversed.

MOYER, C.J., F.E. SWEENEY and LUNDBERG STRATTON, JJ., concur.

RESNICK, J., concurs in judgment.

COOK, J., concurs in judgment only.

DOUGLAS, J., dissents.

_____

**COOK, J. , concurring in judgment only.**

{¶30} I agree with the majority that the judgment of the court of appeals should be reversed. But because the majority's analysis supporting its reversal is unnecessary, I join neither the majority's rationale nor its syllabus.

{¶31} The court should resolve this case on the basis that the state failed to invoke the jurisdiction of the trial court to reimpose its earlier stayed commitment. Cross's original juvenile proceeding—the case in which the trial court imposed the stayed commitment—was case No. J-101241. Juv.R. 35(A) provides that "[t]he continuing jurisdiction of the court shall be invoked by motion filed in the original proceeding, notice of which shall be served in the manner provided for the service of process." Therefore, the rule permitted the state to seek reinstatement of the stayed commitment *only* by filing a motion in case No. J-101241. But the record does not reflect that the state ever filed such a motion in that original proceeding.

{¶32} Instead, the caption of the order in which the trial court actually rescinded the stay reads "CASE NO. J-109845/110042." These are the case numbers for Cross's second juvenile proceeding (for petty theft) and his third juvenile proceeding (for unruliness), respectively. In a formal March 28, 2000

judgment entry, the trial court repeated its order; again, the entry related only to the second and third offenses. The trial court's April 5, 2000 nunc pro tunc entry was similarly underinclusive.

{¶33} Thus, even assuming arguendo that the trial court can retain jurisdiction over a juvenile adjudicated delinquent by imposing a stay such as the one found here, the state never satisfied the Juvenile Rules. Because the state failed to invoke any continuing jurisdiction over Cross to reimpose the stayed commitment, the trial court was unable to do so. The majority's rationale, however, ignores this threshold error and proceeds to determine the merits of an issue that this cause does not present.

{¶34} Accordingly, I concur in judgment only.

_____

David H. Bodiker, Ohio Public Defender, and Felice Harris, Assistant Public Defender, for appellant.

Robert D. Horowitz, Stark County Prosecuting Attorney, Karen S. Dummermuth and Kristen Bates Alyward, Assistant Prosecuting Attorneys, for appellee.

_____