OPINION
{¶ 1} J.F., a minor, appeals from a decision and entry of the Greene County Court of Common Pleas, Juvenile Division, committing him to the Ohio Department of Youth Services under a previously suspended commitment.
 {¶ 2} The record reflects that J.F. was charged on December 1, 2003 with five *Page 2 
counts of delinquency for theft, a felony of the fifth degree if committed by an adult; one count of complicity to theft, a felony of the fourth degree if committed by an adult; one count of resisting a lawful arrest, a misdemeanor of the second degree if committed by an adult; and domestic violence, a misdemeanor of the first degree if committed by an adult. Subsequently, in exchange for his admission to the five counts of theft, one count of complicity to theft, and one count of resisting arrest, the State dismissed the domestic violence charge.
 {¶ 3} Following a March 22, 2004 dispositional hearing, the juvenile court committed J.F. to the Department of Youth Services ("DYS") for an indefinite term consisting of a minimum period of six months on each felony offense to run consecutively and a maximum period not to exceed his twenty-first birthday. The court, however, suspended the commitment on the following conditions:
 {¶ 4} "(1) No future violation of law.
 {¶ 5} "(2) Successful Compliance with Monitored Time (Ohio R.C. Section 2152.19(A)[(4)](i), until the age of 18.
 {¶ 6} "(3) Successfully complete the Felony Offenders Program.
 {¶ 7} "(4) Successfully complete Community Control.
 {¶ 8} "(5) Pay fines, court cost and restitution in a timely manner."
 {¶ 9} Between March 2004 and March 2006, J.F. came before the juvenile court on a number of different occasions, including July 2004, on a claim of petty theft; December 2004, for a probation revocation hearing after being caught smoking in a school bathroom; April 2005, for a probation revocation hearing after fleeing from a residential treatment program; and June 2005, on a claim of falsification. Altogether, *Page 3 
J.F. appeared before the juvenile court on 12 separate claims. With regard to each claim, J.F.'s probation or intensive probation was continued. In addition, J.F. was ordered by the court to attend Miami Valley Regional Rehabilitation Center, with which he successfully complied until his release from the program in November 2005. At that time, the court continued J.F. on intensive probation and further ordered that he attend counseling with Integrated Youth Services.
 {¶ 10} On March 1, 2006, the juvenile court held a probation termination hearing where it ordered that J.F. be released from intensive probation, that he pay off pending fines and court costs, and that his ability to obtain a driver's license be reinstated. Lori Buckwalter, the Intensive Community Control Director, recommended the termination on the condition, however, that monitored time remain in effect. The corresponding journal entry reflected the court's decision except that the following terms were used in place of "intensive probation": "The Child's status on Intensive Community Control shall be terminated effective March 1, 2006." (Emphasis added.) Furthermore, there was no mention of monitored time.
 {¶ 11} On August 31, 2006, J.F. appeared before the juvenile court for a plea hearing on a complaint alleging delinquency for one count of possession of a controlled substance, a minor misdemeanor if committed by an adult, and one count of possession of drug paraphernalia, a fourth degree misdemeanor if committed by an adult. The following exchange took place at the hearing concerning J.F.'s constitutional rights:
 {¶ 12} "[THE COURT:] You have the right to have a lawyer represent you at all stages of the proceedings, you may contact the Public Defender's Office to see if you qualify for their services which are income based, or you may contact a private attorney *Page 4 
instead.
 {¶ 13} "You have the right to remain silent. You have the right to trial; right to cross-examine your witnesses that are presented by the State at the trial; the right to bring in your own witnesses through subpoena at trial.
 {¶ 14} "The consequences I could impose upon you are the same regardless of whether or not you would volunteer your admission to me today or if we would later have a trial, the Court would determine, after listening to the testimony, that you committed this offense. I could remand you to detention, I could impose a fine, Court costs, place you back on probation.
 {¶ 15} "I'm required to suspend your driver's license if you have one for a minimum period of six months.
 {¶ 16} "You have a suspended commitment, excuse me, to the Ohio Department of Youth Services. As you know, that commitment could be imposed and you could be placed at the Ohio Department of Youth Services, although these are misdemeanor offenses, or I can make any other order that I think would be in your best interest.
 {¶ 17} "So, as to Count I of this complaint, do you wish to admit or deny your responsibility to the offense of possession of a controlled substance, a minor misdemeanor?
 {¶ 18} "A: Admit.
 {¶ 19} "THE COURT: As to Count II of the complaint, being possession of drug paraphernalia, misdemeanor of the 4th degree, you wish to admit or deny your responsibility?
 {¶ 20} "A: Admit. *Page 5 
 {¶ 21} "THE COURT: Do you want a lawyer to represent you?
 {¶ 22} "A: No, Your Honor.
 {¶ 23} "THE COURT: If that is acceptable to your mother, I need you both to sign the waiver of summons form. Thank you.
 {¶ 24} "If you admit, you're waiving your right to remain silent. Is that a right you wish to waive, your right to remain silent and tell me you committed these offenses?
 {¶ 25} "A: Yes, Your Honor.
 {¶ 26} "THE COURT: Do you understand you're waiving your right to a trial?
 {¶ 27} "A: Yes, Your Honor.
 {¶ 28} "THE COURT: So if you change your mind and you decide that you want me to hear from your witnesses or you want to question the State's witnesses, I'm not going to allow you to have that trial. Do you understand?
 {¶ 29} "A: Yes, Your Honor.
 {¶ 30} "THE COURT: You have a suspended commitment to the Ohio Department of Youth Services that was suspended in March of 2004. You had six felony offenses. If I want to impose the suspended commitment, you could be placed at the Ohio Department of Youth Services for a minimum period of three years because you have six suspended commitments, or I could commit you until you turn the age of 21. Do you understand?
 {¶ 31} "A: Yes, Your Honor.
 {¶ 32} "THE COURT: And you still wish to admit to these offenses?
 {¶ 33} "A: Yes, Your Honor.
 {¶ 34} "THE COURT: Then based on your admission I will find you to be *Page 6 
delinquent as alleged in the complaint." (Plea H'rg Tr. at 3-6.)
 {¶ 35} Thereafter, the court ordered that J.F. be committed to the custody of the DYS under one count of theft from the previously suspended commitment. He was sentenced to an indefinite term of incarceration ranging from a minimum period of six months to a maximum period not to exceed his twenty-first birthday.
 {¶ 36} J.F. filed a timely appeal and advances the following four assignments of error for our review:
 {¶ 37} ". "THE JUVENILE COURT ERRED WHEN IT IMPOSED [J.F.'S] SUSPENDED COMMITMENT, IN VIOLATION OF IN RE CROSS, 96 OHIO ST.3D 328, 2002-OHIO-4183, 774 N.E.2D 258; AND THE EQUAL PROTECTION AND DOUBLE JEOPARDY CLAUSES OF THE FIFTH AND FOURTH [sic] AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 2 AND 10 OF THE OHIO CONSTITUTION."
 {¶ 38} I. "THE JUVENILE COURT VIOLATED [J.F.'S] RIGHT TO NOTICE AND DUE PROCESS OF LAW AS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION; ARTICLE I, SECTION SIXTEEN OF THE OHIO CONSTITUTION; AND JUV.R. 35, WHEN IT FAILED TO FOLLOW THE REQUIREMENTS OF JUV.R. 35(B)."
 {¶ 39} II. "THE TRIAL COURT VIOLATED [J.F.'S] RIGHT TO COUNSEL AND RIGHT TO DUE PROCESS UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, ARTICLE I, SECTION SIXTEEN OF THE OHIO CONSTITUTION, OHIO REVISED CODE SECTION 2151.352, AND JUVENILE RULES 4, 29, AND 35." *Page 7 
 {¶ 40} V. "[J.F.'S] ADMISSION WAS NOT KNOWING, VOLUNTARY, AND INTELLIGENT, IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION, AND JUVENILE RULE 29."
 {¶ 41} Upon review, we find that the juvenile court retained jurisdiction over J.F. following the termination of his status on intensive probation, where J.F. remained under community control until he satisfied the condition that he comply with monitored time until the age of 18. However, the court violated J.F.'s constitutional right to due process of law by failing to provide timely notice that his probation would be revoked and to inform him of the grounds on which his probation would be revoked, pursuant to Juv.R. 35(B), before imposing J.F.'s suspended commitment. Accordingly, the judgment of the trial court will be reversed, and this matter will be remanded for further proceedings consistent with this opinion.
 I {¶ 42} Under his first assignment of error, J.F. contends that the trial court violated the holding of the Supreme Court of Ohio in In reCross, 96 Ohio St.3d 328, 2002-Ohio-4183, 774 N.E.2d 258, in addition to the equal protection and double jeopardy clauses of the United States Constitution and Article I, sections 2 and 10 of the Ohio Constitution, when it imposed his suspended commitment to the DYS despite having terminated his status on intensive probation on March 1, 2006. For the following reasons, we disagree with this argument.
 {¶ 43} R.C. 2152.19(A) provides a court with numerous dispositional options once *Page 8 
a child is adjudicated a delinquent child. Relevant to the present matter, a court may "[p]lace the child on community control under any sanctions, services, and conditions that the court prescribes. As a condition of community control in every case and in addition to any other condition that it imposes upon the child, the court shall require the child to abide by the law during the period of community control." In enacting this statute, it was the legislature's intent to "move away from using the term `probation' generically in favor of the broader term `community control.'" Ohio Criminal Sentencing Commission, A Plan for Juvenile Sentencing in Ohio (Fall 1999) 44. Community control, as referred to in R.C. 2152.19, includes, but is not limited to, a period of basic probation supervision, R.C. 2152.19(A)(4)(a); a period of intensive probation supervision, R.C. 2152.19(A)(4)(b); a period of community service, R.C. 2152.19(A)(4)(d); and a requirement that the child serve monitored time, R.C. 2152.19(A)(4)(i).[1]
 {¶ 44} In this case, the juvenile court suspended J.F.'s commitment to the DYS subject to the following conditions: (1) no violation of any laws in the future, (2) successful compliance with monitored time, (3) successful completion of the felony offender program and community control, and (4) payment of fines, costs and restitution. Each condition was listed separately and not made contingent upon one another. In its decision dated March 3, 2006, the court terminated J.F.'s status on "Intensive Community Control," ordered that he pay the balance owed on fines and costs, imposed a period of community service, and lifted the prohibition on his obtaining a driver's *Page 9 
license. J.F. contends that once the court terminated his status on community control, it subsequently lacked jurisdiction to impose his suspended commitment to the DYS. In support of his argument, J.F. citesIn re Cross, 96 Ohio St.3d 328, 2002-Ohio-4183, 774 N.E.2d 258.
 {¶ 45} In Cross, the Supreme Court of Ohio held that a juvenile court loses its jurisdiction to reimpose a suspended commitment to the DYS after a juvenile's term of probation has ended. Id. at ]}28. There, a juvenile was adjudicated delinquent for burglary and committed to the DYS for a minimum of six months and maximum not to exceed his twenty-first birthday. Id. at ¶ 2. His commitment was suspended on the condition that he commit no further violations and that he be placed on probation for an indefinite period. Id. As part of his probation, the juvenile was ordered to obey all probationary terms and conditions, in addition to all parental rules and laws. Id. at ¶ 3.
 {¶ 46} Approximately ten months following his initial adjudication, the juvenile received a general release from probation. Id. at ¶ 4. However, in less than one year, he returned to the juvenile court on charges of petty theft and unruliness. Id. at ¶ 5. The court, consequently, ruled that the juvenile had violated the initial order from which his previous commitment had been suspended, and it reimposed the DYS commitment. Id. at ¶ 6. The court of appeals affirmed.
 {¶ 47} In reversing the judgment, the Supreme Court of Ohio held that "the completion of probation signals the end of the court's jurisdiction over a delinquent juvenile." Id. at 1J28. According to the supreme court, former R.C. 2151.355 authorized courts to impose probation in "very broad and creative" ways that facilitated their ability to maintain control over juvenile delinquents. Id. at ]}27. However, the court warned that *Page 10 
"[t]he threat of actual incarceration * * * lasts only as long as the probation lasts." Id.
 {¶ 48} The State, in the present matter, distinguishes Cross on the fact that the juvenile's probation in that case was terminated generally, leaving no conditions with which to comply. Here, however, the State argues that the juvenile court merely terminated one condition of J.F.'s "probationary" status, i.e., intensive community control, while maintaining the condition that he comply with monitored time. According to the State, this situation more closely resembles that ofIn re Walker, Franklin App. No. 02AP-421, 2003-Ohio-2137.
 {¶ 49} In Walker, the Tenth District found that the trial court had not relinquished jurisdiction over a juvenile adjudicated delinquent on one count of rape, where the initial Terms and Conditions of Probation indicated that the juvenile was placed on probation for 24 months oruntil all conditions had been completed. (Emphasis added.) Id. at {¶ }6. Included in the list of conditions was a requirement that the juvenile complete sexual offender counseling. Id. Following two extensions of the juvenile's probationary period for subsequent violations, the juvenile court exercised its continuing jurisdiction a third time to extend his probation until he completed residential treatment for sexual offenders. Id. at ?13.
 {¶ 50} According to the court of appeals, the lower court's extension of the juvenile's probation complied with the Terms and Conditions filed with the original order placing the juvenile on probation, as well as the principle set forth in former R.C. 2151.355 that a "juvenile court has broad discretion in fashioning orders specifically tailored to address each juvenile's particular treatment and rehabilitative needs." Id. at 22. *Page 11 
 {¶ 51} While we do not find the facts in Walker or Cross to be directly on point, we do find these cases to be instructive in the matter before us. Here, similar to the situation in Walker, J.F.'s commitment to the DYS was suspended on separate and distinct conditions that he comply with monitored time and complete community control. Contextually, we believe it is reasonable to infer that the juvenile court used the term "community control" interchangeably with the term "probation," referring to the express condition listed in R.C.2152.19(A)(4)(a). "`The legal operation and effect of a judgment must be ascertained by a construction and interpretation of it. This presents a question of law for the court. Judgments must be construed as a whole, and so as to give effect to every word and part. The entire judgment roll may be looked to for the purpose of interpretation. * * * The legaleffect, rather than the mere language used, governs.'" (Emphasis added.)Hofer v. Hofer (App. 1940), 35 Ohio Law Abs. 486, 42 N.E.2d 165. See, also, Zimmerman v. Zimmerman (Jan. 31, 1980), Montgomery App. No. 6490,1980 WL 352522, at *3. Our interpretation is strengthened by the March 3, 2006 decision terminating J.F.'s "Intensive Community Control" yet ordering that he complete a period of community service. Unlike inCross, where the termination extinguished all of the conditions of the juvenile's probation, the complete record here demonstrates that the juvenile court intended to retain jurisdiction over J.F.'s initial order. First, by imposing an additional condition of community service in its March 3, 2006 decision, we find that the juvenile court expressly asserted its continuing control over J.F.'s claim until this condition and all pending conditions were completed. Moreover, at the hearing preceding this decision, Lori Buckwalter, the Intensive Community Control Director, stated on the record that she recommended terminating J.F.'s status on intensive *Page 12 
probation while continuing the requirement that he comply with monitored time. (Prob. Termination Hr'g at 3.) The action taken by the court indicates that it accepted this recommendation, clearly stating throughout the hearing that J.F.'s probation was terminated successfully. (Emphasis added.) (Id. at 2, 6, 7.) Nowhere does the record reveal, however, that the court also intended to terminate the period of monitored time.
 {¶ 52} Thus, looking to the entire record for the purpose of our interpretation of the March 3, 2006 decision, we find that the juvenile court did not relinquish its control over the terms of J.F.'s suspended commitment when it terminated his status on "Intensive Community Control." Instead, the legal effect of this decision was to terminate the period of intensive probation while maintaining the requirement that J.F. comply with monitored time until he reached the age of 18. As a result, the juvenile court properly retained jurisdiction to impose upon J.F. a suspended commitment to the DYS.
 {¶ 53} J.F.'s first assignment of error is overruled.
 II {¶ 54} In his second assignment of error, J.F. argues that the juvenile court violated his constitutional rights to notice and due process of law when it imposed his suspended commitment without the State properly invoking the jurisdiction of the court and without notice being provided that J.F. had violated a condition of his probation.
 {¶ 55} The United States Supreme Court has held that the Due Process Clause of the U.S. Constitution protects juveniles as well as adults.Schall v. Martin (1984), 467 U.S. 253, 265, 268, 104 S.Ct. 2403,81 L.Ed.2d 207. Thus, in a delinquency proceeding *Page 13 
in which a juvenile may be committed to a state institution, due process of law requires that the majority of rights afforded to adult criminal defendants must be afforded to the juvenile. In the Matter ofCaruso (May 17, 1991), Lucas App. No. L-90-250, 1991 WL 82985, at *3, citing Application of Gault (1967), 387 U.S. 1, 30, 87 S.Ct. 1428,18 L.Ed.2d 527. Pertinent to the case before this Court, due process requires that a probationer be given reasonable notice of the violation of which he is accused. Id. at *4, citing Gagnon v. Scarpelli (1973),411 U.S. 778, 786, 93 S.Ct. 1756, 36 L.Ed.2d 656. Such notice must be timely in order to be effective. State v. Barison (Oct. 22, 1974), Montgomery App. No. 4464, 1974 WL 184611, at *3.
 {¶ 56} In keeping with these rights, a juvenile court must comply with the requirements of Juv.R. 35 before it imposes a previously suspended commitment. In re Royal (1999), 132 Ohio App.3d 496, 508,725 N.E.2d 685. Juv.R. 35 provides the following:
 {¶ 57} "(A) The continuing jurisdiction of the court shall be invoked by motion filed in the original proceeding, notice of which shall be served in the manner provided for the service of process.
 {¶ 58} "(B) The court shall not revoke probation except after a hearing at which the child shall be present and apprised of the grounds on which revocation is proposed. The parties shall have the right to counsel and the right to appointed counsel where entitled pursuant to Juv.R. 4(A). Probation shall not be revoked except upon a finding that the child has violated a condition of probation of which the child had, pursuant to *Page 14 
Juv.R. 34(C), been notified."[2]
 {¶ 59} In the present matter, J.F. relies on Justice Cook's concurring opinion in In re Cross, supra, in support of his argument that the State failed to invoke the juvenile court's continuing jurisdiction before the court reinstated his suspended commitment. As we discussed above, in that case the trial court issued the appellant a general release from probation, which effectively terminated all conditions of said probation. In re Cross, 2002-Ohio-4183 at ¶ 4. Subsequently, the court attempted to impose a suspended commitment from the original proceeding upon the filing of two new complaints. Id. at ?5-6. Justice Cook pointed out that the case number of the original juvenile proceeding in which the trial court imposed the suspended commitment differed from the case numbers of the subsequent proceedings adjudicating the juvenile on one count of theft and one count of unruliness. Id. at ]}31-32. According to Justice Cook, the difference in case numbers was one indication that the State failed to comply with Juv.R. 35(A), and, thus, invoke the court's continuing jurisdiction, because it didn't file a motion in the original proceeding. Id. at ]}33. That case, however, is distinguishable from the matter before this Court. Here, J.F.'s status on community control was not generally terminated prior to his suspended commitment being imposed. Pursuant to our finding under the first assignment of error, the juvenile court's March 3, 2006 termination entry only terminated J.F.'s status on intensive probation, not the condition that he comply with monitored time until the age of 18. Furthermore, unlike the facts in Cross, the new complaint against J.F. alleging delinquency for one count of possession of a controlled *Page 15 
substance and one count of possession of drug paraphernalia was filed under the same case number as the 2003 original proceeding from which J.F.'s commitment to the DYS was suspended.
 {¶ 60} The Ohio Supreme Court has held that "the completion of probation signals the end of the court's jurisdiction over a delinquent juvenile." We also believe the opposite to be true — theincompletion of probation signals the continuation of the court's jurisdiction over a delinquent juvenile. Therefore, we find that the State had no duty to invoke the juvenile court's continuing jurisdiction where the court's jurisdiction had not yet been relinquished.
 {¶ 61} In turning to whether the court complied with Juv.R. 35 (B), however, we find that it did not satisfy that rule's requirements, where the court failed to make a finding on the record that J.F. had violated a condition of his community control or even to inform J.F. prior to or during the plea hearings held on August 31, 2006 and September 20, 2006 of the condition that he allegedly violated.
 {¶ 62} J.F. cites In re Royal, supra, to support his argument that the juvenile court committed reversible error when it failed to follow the requirements of Juv.R. 35(B). In that case, like here, the appellant appeared before the juvenile court on a complaint alleging criminal charges subsequent to the original proceeding in which the court suspended a commitment to the DYS and placed the appellant on intensive probation. Id. at 500. At a dispositional hearing with respect to the new complaint, the court summarily reviewed the substance of the hearing and the appellant's waiver of rights and admission to the charges. Id. at 501. However, the record, including the transcript of the dispositional hearing and the judgment entry of disposition, failed to mention a *Page 16 
probation violation or inform the appellant of the condition of probation that he allegedly violated. Id. at 507. Instead of making the requisite finding that the appellant had violated a condition of his probation, the court simply asserted that a prior suspended commitment could be reimposed. Id. According to the Seventh District, the court's failure to comply with Juv.R. 35(B) amounted to a violation of the appellant's constitutional right to due process:
 {¶ 63} "While we agree that a juvenile court may impose a previously suspended commitment under [former] R.C. 2151.355(A)(22) as a further disposition when it is proper and consistent with the purposes of the Juvenile Rules, the court must nonetheless comply with Juv.R. 35(B) before doing so to give the minor notice as to why a previously suspended commitment is ordered reinstituted. * * *" Id. at 508.
 {¶ 64} We find In re Royal analogous to the present matter. Following the 2003 original proceeding in which the court suspended his commitment to the DYS, J.F. was brought before the juvenile court on an August 2006 complaint alleging delinquency on two additional charges. We further note that this complaint followed the March 2006 order terminating his status on intensive probation but continuing his period of monitored time.[3] The record shows that at the plea hearing, the court read the complaint to J.F. and reviewed his constitutional rights. The court also informed J.F. that he had a suspended commitment that could be imposed at the court's discretion. Nowhere, *Page 17 
however, does the transcript of the plea hearing indicate that J.F. was informed of a probation violation — specifically, of which condition of probation he had violated. Similarly, the corresponding judgment entry simply lists the offenses with which J.F. is charged, followed by the court's order imposing fines in the amount of $150.00 plus court costs and a previously suspended commitment under the original complaint. Although the court explains that reasonable efforts had been made to prevent such commitment, the entry, like the prior proceeding, does not mention a finding of a probation violation.
 {¶ 65} Reiterating the finding of the Seventh District, we hold that it is tantamount to the constitutional rights of a juvenile that the trial court comply with Juv.R. 35(B). Due process requires (1) timely notice that a juvenile's probation will be revoked, (2) that the juvenile be informed of the grounds on which his or her probation will be revoked, and (3) that the juvenile be informed he or she will be subject to a suspended commitment of incarceration. In light of the current jurisprudence involving the rights of juvenile delinquents, such notice requirements afford the juvenile and his or her parents adequate time to meaningfully consider each case and determine whether to obtain legal counsel. See In re C.S., Ohio St.3d, 2007-Ohio-4919, N.E.2d, at paragraph two of the syllabus (holding that a juvenile may waive his or her constitutional right to counsel in a delinquency proceeding, subject to certain standards, if the juvenile is counseled and advised by a parent, custodian or guardian); In re R.B., 166 Ohio App.3d 626,2006-Ohio-264, 852 N.E.2d 1219, at ]}25 (interpreting R.C. 2151.352 to mean that a juvenile's waiver of his or her right to counsel is knowing and voluntary only when the juvenile has some adult, i.e., a parent, guardian or custodian, to advise him or *Page 18 
her).
 {¶ 66} Accordingly, we find that the juvenile court violated J.F.'s constitutional right to due process when it failed to provide notice that the August 31, 2006 and September 20, 2006 dispositional hearings were, in essence, probation revocation hearings, and to specifically set forth the condition of his probation that he violated. Notice that admission to the charges in the August 30, 2006 complaint would constitute a violation of J.F.'s community control, specifically his extended period of monitored time, was imperative to J.F.'s decision to retain legal counsel.
 {¶ 67} J.F.'s second assignment of error is sustained.
 III {¶ 68} J.F.'s third and fourth assignments of error are as follows:
 {¶ 69} "THE TRIAL COURT VIOLATED [J.F.'S] RIGHT TO COUNSEL AND RIGHT TO DUE PROCESS UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, ARTICLE I, SECTION SIXTEEN OF THE OHIO CONSTITUTION, OHIO REVISED CODE SECTION 2151.352, AND JUVENILE RULES 4, 29, AND 35."
 {¶ 70} V. "[J.F.'S] ADMISSION WAS NOT KNOWING, VOLUNTARY, AND INTELLIGENT, IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION, AND JUVENILE RULE 29."
 {¶ 71} Having sustained J.F.'s second assignment of error, we find that his third and fourth assignments of error have been rendered moot. Consequently, we decline to *Page 19 
address those assignments of error. See App.R. 12(A)(1)(c).
 IV {¶ 72} Pursuant to our disposition of J.F.'s second assignment of error, the judgment of the trial court is reversed, and this matter is remanded for further proceedings consistent with this opinion.
 {¶ 73} Judgment reversed and remanded.
WOLFF, P.J., and FAIN, J., concur.
[1] R.C. 2152.02(U) provides that "monitored time" is given the same meaning as in R.C. 2929.01(Z) — "a period of time during which an offender continues to be under the control of the sentencing court or parole board, subject to no conditions other than leading a law-abiding life."
[2] Juv.R. 34(C) states that a child placed on probation shall receive a written statement of the conditions of his or her probation.
[3] The State contends that Juv.R. 35(B) does not technically apply because J.F. had previously been "terminated from probation." We find this to be contradictory to the State's argument under the first assignment of error that the court retained jurisdiction to impose the suspended commitment by only terminating J.F.'s status on intensive probation but not his compliance with a period of monitored time. *Page 1