[Cite as *In re Mi.H.*, 2011-Ohio-6736.]

STATE OF OHIO      )
                              )ss:
COUNTY OF SUMMIT    )

IN THE COURT OF APPEALS
NINTH JUDICIAL DISTRICT

IN RE: MI.H.
       MAI.H.
       MI-J.H.
       MA-K.H.
       M.B.

C.A. Nos.    26077
               26096

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.    DN07-09-0845
               DN07-09-0846
               DN07-09-0847
               DN07-09-0848
               DN08-08-0660

DECISION AND JOURNAL ENTRY

Dated: December 28, 2011

WHITMORE, Judge.

{¶1} Appellants, Jaynett B. ("Mother") and Michael H. ("Father"), have each appealed from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated parental rights to Mi.H., Mai.H., Mi-J.H., Ma-K.H., and M.B., and placed the children in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.

I

{¶2} Mother had six children, and the children had three different fathers. The oldest child was placed in the legal custody of a paternal relative, and neither that child nor his father is a party to this appeal. This appeal concerns the custody of the remaining five children. Appellant Father is the biological parent of the next four children: Mi.H., born January 20, 2002;

Mai.H., born December 22, 2003; Mi-J.H., born April 25, 2005; and Ma-K.H., born February 23, 2007. The paternity of the youngest child, M.B., born August 11, 2008, was never established.

{¶3}   A few months after CSB became involved with the family on a voluntary basis, the police found three of the children alone and unsupervised. The police assumed custody of the children under Juv.R. 6 and contacted CSB. The agency initiated the present action on September 13, 2007. In due course, all five children were adjudicated to be dependent and were placed in the temporary custody of CSB.

{¶4}   Mother and Father were each provided with a case plan, and the agency attempted to reunify the family. Mother's case plan addressed her need to properly supervise the children and to regularly get them to school and their appointments. Her plan required a parenting assessment, parenting classes, a mental health assessment, a chemical dependency assessment, and efforts to obtain employment and stable housing. Father's case plan came into effect following his release from prison on charges of domestic violence against Mother. His case plan included requirements similar to those of Mother as well as an anger management program.

{¶5}   Testimony established that two of the children have special needs. Mi.H. is in counseling for aggressive behavior, depression, disruptive behavior, and to improve his social skills. Mai.H. sees a psychiatrist for behavioral concerns and self-injurious behaviors, including pulling out her hair and hitting herself.

{¶6}   On March 4, 2009, CSB moved for permanent custody of all except the youngest child. Before the motion was heard, however, all of the children were able to be placed in the legal custody of relatives. The oldest child was placed with a paternal relative. The next four children were placed with a maternal aunt, Sherica Burkett. The youngest child was placed with a maternal cousin, Tony Knight, and his wife, Lysa. At that point, the trial court considered the

cases closed, save for "any future motions regarding the children's custody, visitation and/or support."

**{¶7}** The placement of the oldest child remained satisfactory, and that child is not, therefore, a party to this appeal. The other two placements eventually disrupted, however. The placement with Ms. Burkett ended, at her request, because she became financially and emotionally overwhelmed, and she had not received promised assistance from the parents or other family members. The placement with the Knights ended when the couple decided to obtain a divorce and expressed the belief that M.B. would be better off in his siblings' foster home than with a single parent. None of these relatives or the caseworker was able to locate alternative relatives that were willing and able to assume custody, and the agency sought temporary custody of the children. The five children were returned to the same foster home in which they had previously resided. The children had visited with each other while they were separated into different homes and shared a strong bond.

**{¶8}** Mother and Father were permitted to visit with the children, but they were very inconsistent in their attendance. During the last few months, for example, Mother missed 19 of 29 visits and Father missed 17 of 25. The children loved Mother and missed her when she did not show up, but their relationship with Father was not as strong. Also, Father had difficulty managing the children during his visits, and he made no effort to comply with other aspects of his case plan.

**{¶9}** Eventually, CSB moved for permanent custody once again. Both the guardian ad litem and the caseworker supported the motion. The guardian ad litem testified that the three oldest children reported that they wanted to live with the foster parents where they felt safe. The children had resided with the same foster parents for a substantial period of time, and the foster

parents were interested in adopting all of them if the agency obtained permanent custody. The psychiatrist testified that although the children were difficult to handle, the foster parents were doing a fine job with them. The caseworker testified to observing frequent signs of affection between the foster parents and the children. Mi.H.'s counselor attributed his recent improvement to the fact that the foster home is a very stable and structured environment where the child feels safe. Mai.H.'s psychiatrist attributed her progress to the foster parents and noted that she is very attached to them.

{¶10} Mother sought legal custody of all five children and alternatively requested legal custody with protective supervision in CSB. Father sought legal custody of his four children and alternatively requested that legal custody be awarded to the paternal grandmother, but she had not seen the children for over a year. A maternal great uncle, Richard Burkett, moved for legal custody of M.B., the youngest child, but the uncle had had little contact with M.B. since early in these proceedings.

{¶11} Following a hearing on all pending motions, the trial court granted permanent custody of the five children to CSB. The trial court noted that Mother recognized she was unable to care for her children and found that the other potential caregivers had not nurtured a positive relationship with the children. Mother and Father have separately appealed, and they have each assigned three errors for review. The parents' assignments of error and supporting arguments are virtually identical.

Mother's Assignment of Error Number One

"THE TRIAL COURT DENIED MOTHER HER FUNDAMENTAL RIGHT TO RAISE HER CHILDREN WHEN THE COURT REOPENED THE WITHIN CASE ON JULY 28, 2010, INSTEAD OF OPENING A NEW CASE AND PROVIDING MOTHER WITH THE OPPORTUNITY TO FULLY WORK THE CASE PLAN."

Mother's Assignment of Error Number Two

"MOTHER'S DUE PROCESS RIGHTS WERE DENIED WHEN THE CASE WAS REOPENED RATHER [THAN] A NEW CASE BEING FILED."

Father's Assignment of Error Number One

"THE TRIAL COURT DENIED FATHER HIS FUNDAMENTAL RIGHT TO RAISE HIS CHILDREN WHEN THE COURT REOPENED THE WITHIN CASE ON JULY 28, 2010 INSTEAD OF OPENING A NEW CASE AND PROVIDING FATHER WITH THE OPPORTUNITY TO FULLY WORK THE CASE PLAN[.]"

Father's Assignment of Error Number Two

"FATHER'S DUE PROCESS RIGHTS WERE DENIED WHEN THE CASE WAS REOPENED RATHER THAN A NEW CASE BEING FILED[.]"

{¶12} Through their first two assignments of error, Mother and Father have contended that the trial court erred in proceeding on CSB's second motion for permanent custody by "reopening" the existing case instead of creating a new case and providing them with an additional year to work on their case plans. They argue that when the legal custody placements disrupted, due process required the agency to file a "new case" rather than continuing with the existing case.

{¶13} The parents have waived and/or forfeited this argument on appeal because they either stipulated to the result or failed to raise the issue before the trial court. See *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, at ¶23. When the legal custody placements ended, neither parent requested that a new case be filed, nor did they object to the change in disposition from legal custody to temporary custody with the agency. Mother did not even attend the relevant hearings, and Father stipulated to the disposition of temporary custody for his children. Finally, neither parent raised a due process argument before the trial court. Finding no structural error, we conclude that the parents have forfeited all but plain error. *Payne*, at ¶23-24. Moreover, the claimed error does not reach the level of plain error as we also conclude that no error occurred.

**{¶14}** The parents cite R.C. 2151.353(F) in support of their claim that the trial court should have opened a new case, apparently taking the position that the jurisdiction of the juvenile court lapsed after one, or potentially two years, of temporary custody.

**{¶15}** R.C. 2151.353(F) provides as follows:

"Any temporary custody order issued pursuant to division (A) of this section shall terminate one year after the earlier of the date on which the complaint in the case was filed or the child was first placed into shelter care, except that, upon the filing of a motion pursuant to section 2151.415 of the Revised Code, the temporary custody order shall continue and not terminate until the court issues a dispositional order under that section. In resolving the motion, the court shall not order an existing temporary custody order to continue beyond two years after the date on which the complaint was filed or the child was first placed into shelter care, whichever date is earlier, regardless of whether any extensions have been previously ordered pursuant to division (D) of section 2151.415 of the Revised Code." R.C. 2151.353(F).

**{¶16}** The Ohio Supreme Court has held that the passing of the statutory time periods in R.C. 2151.353(F) "does not divest juvenile courts of jurisdiction to enter dispositional orders." *In re Young Children* (1996), 76 Ohio St.3d 632, syllabus. Where parenting problems still remain unresolved after the specified periods of time, "courts have the discretion to make a dispositional order in the best interests of the [children]." Id. at 638. The *Young* Court emphasized that "because the court retains jurisdiction over the [children], it may make further dispositional orders as it deems necessary to protect the [children]." Id. In fact, "[t]he juvenile court retains jurisdiction over those children to ensure their safety and proper treatment until they become adults." *In re Cross*, 96 Ohio St.3d 328, 2002-Ohio-4183, at ¶10, citing R.C. 2151.353(E)(1).

**{¶17}** Moreover, although a grant of legal custody to an individual is intended to be permanent in nature, the trial court is specifically authorized by statute to modify or terminate such an order if it finds, as it did here, that a change has occurred in the circumstances of the

legal custodian and that such a change is necessary to serve the best interest of the child. R.C. 2151.42(B). In addition, where the agency has requested the court to modify or terminate a previous order of disposition, the court is further authorized to "hold a hearing upon the motion as if the hearing were the original dispositional hearing." R.C. 2151.353(E)(2). Consequently, the juvenile court retained jurisdiction over the children, was entitled to terminate the order of legal custody, and was authorized to make a further disposition.

{¶18} Although Ohio statutes do not specify exactly how much time parents have to work on case plans, the courts generally permit a reasonable amount of time under the circumstances and as is necessary to effectuate the best interests of the children. In this regard, it is worth noting that by the time of the permanent custody hearing, the present matter had been pending for nearly four years and, in that time, the parents had not made any notable progress toward reunification. By any measure, these children deserved to be moving towards a permanent placement and not just "starting over."

{¶19} The first two assignments of error of Mother and of Father are overruled.

<u>Mother's Assignment of Error Number Three</u>

"THE TRIAL COURT ERRED IN GRANTING [CSB] PERMANENT CUSTODY WHEN THE COURT DID NOT FIND THAT [CSB] HAD MADE [REASONABLE] EFFORTS TO RETURN THE CHILDREN TO A PARENT[.]"

<u>Father's Assignment of Error Number Three</u>

"THE TRIAL COURT ERRED IN GRANTING [CSB] PERMANENT CUSTODY WHEN THE COURT DID NOT FIND THAT [CSB] HAD MADE [REASONABLE] EFFORTS TO RETURN THE CHILDREN TO A PARENT[.]"

**{¶20}** In their third assignments of error, Mother and Father have claimed that the trial court failed to enter a finding that CSB had made reasonable efforts to return the children to a parent or explain why the agency was not required to enter such a finding.

**{¶21}** In making this argument, the parents have relied upon R.C. 2151.419. This statute indicates the several points in the course of custody proceedings when the trial court is required to determine that a children services agency made reasonable efforts to (1) prevent the removal of a child from the child's home, (2) eliminate the continued removal of a child from the child's home, or (3) make it possible for a child to return safely home. R.C. 2151.419(A)(1). The trial court is not, however, required to make such a determination at the same time it grants permanent custody to the agency unless reasonable efforts were not established earlier in the proceeding. *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, at ¶43.

**{¶22}** Neither parent has argued that the agency failed to make the necessary reasonable efforts determinations in any of the earlier hearings. Consequently, the trial court did not err in failing to make a finding of reasonable efforts at the time it granted permanent custody of the children to the agency. See *In re Tyler C.*, 6th Dist. No. L-07-1159, 2008-Ohio-2207, at ¶75 (holding that a finding of reasonable efforts was not necessary when the agency's request for permanent custody followed an adjudication and an initial disposition of legal custody to mother).

**{¶23}** Mother's third assignment of error and Father's third assignment of error are overruled.

III

{¶24} Mother's three assignments of error are overruled. Father's three assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETH WHITMORE
FOR THE COURT

BELFANCE, P. J.
MOORE, J.
CONCUR

APPEARANCES:

KENNETH C. MARTIN, Attorney at Law, for Appellant.

JAMES E. BRIGHTBILL, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.